## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TOBIN DOLAN; LYDIA DOLAN; TANGEE
DOLAN; DOROTHY JONES; BRIAN RODGERS;
MICHAEL SALAZAR; LINDA SALAZAR;
REYNALDO HERRERA; and KATHY VALERA,

     Petitioners,

     v.                              No. 1:23-cv-908-JB-JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DEANNE CRISWELL, in her official
capacity as Administrator of the Federal
Emergency Management Agency,

     Respondents.

### RESPONSE BRIEF ON THE MERITS OF PETITIONERS' APA CHALLENGE TO HERMIT'S PEAK/CALF CANYON FIRE ASSISTANCE ACT FINAL RULE

Petitioners seek to set aside FEMA's rulemaking for the Hermit's Peak/Calf Canyon Fire Assistance Act on the grounds that it does not compensate claims for non-economic damages. The Rule's exclusion of such damages, however, is entirely consistent with the HPCC Act. The Act expressly limits "allowable damages" to three categories of damages— property loss, business loss, and financial loss—none of which includes the non-economic damages Petitioners seek.

FEMA's interpretation of the HPCC Act is the only reading that gives meaning to all of the Act's provisions regarding damages. Section 104(d)(4)'s "allowable damages" clause limits the categories of damages that claimants may obtain for their injuries, and that are further limited in extent by Section 104(c)(3) to exclude non-compensatory damages, punitive damages, and certain interest. The calculation of these permissible

damages is then conducted pursuant to New Mexico law under Section 104(c)(2). Petitioners' contrary interpretation of the Act renders Section 104(d)(4) as either advisory guidance or redundant surplusage, overlapping with the Act's other damages clauses.

Petitioners' attempts to attack FEMA's interpretation of the HPCC Act are unavailing. Principally, Petitioners' arguments rest on the contention that the HPCC Act broadly incorporates New Mexico law in defining claimants' scope of available damages. Yet the HPCC Act's incorporation of New Mexico law is much more limited. The Act's definition of "injury" incorporates only the meaning of that term from 28 U.S.C. § 1346, not the Federal Tort Claims Act more broadly, including the FTCA's scope of liability. Likewise, the HPCC Act's application of New Mexico law in Section 104(c)(2) is limited to the "calculation of damages" for the identified categories of "allowable damages" in Section 104(d)(4). FEMA's interpretation of the Act properly reads this incorporation of New Mexico law narrowly.

The Court need not find, however, that FEMA's interpretation of the HPCC Act as excluding non-economic damages is the best interpretation of the law. That is because, as a waiver of the United States' sovereign immunity, the Act's scope of damages must be construed narrowly and in the Government's favor. Only where Congress has unequivocally provided for compensation shall a waiver of sovereign immunity exist. Therefore, while FEMA's interpretation of the HPCC Act is the best reading because it gives effect to all provisions of the statute, as long as there is a plausible reading of the Act that does not provide non-economic damages, Congress has not waived sovereign immunity.

For these reasons, Petitioners fail to show that FEMA's determination that non-economic damages are not available for compensation under the HPCC Act is contrary to law, in excess of authority, or arbitrary and capricious. FEMA respectfully requests that the Court reject Petitioners' challenge to FEMA's rulemaking and enter judgment in the Agency's favor.

I.   **Background and Procedural History**

a.   ***Hermit's Peak/Calf Canyon Fire Assistance Act***

This case concerns the Hermit's Peak/Calf Canyon Fire Assistance Act (the "Act" or "HPCC Act") and the compensation available from the United States thereunder. Congress enacted the Act in September 2022 as part of the Continuing Appropriations and Ukraine Supplemental Appropriation Act, 2023. P.L. 117-180, div. G, 136 Stat. 2114.[1] The stated "purposes of this Act are—(1) to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and (2) to provide for the expeditious consideration and settlement of claims for those injuries." Act, § 102(b).

The Act was enacted following the Hermit's Peak/Calf Canyon Fire ("Fire") earlier in 2022. The Fire was the result of the merger of the Hermit's Peak Fire, which began as a prescribed burn by the Forest Service that exceeded containment, and the Calf Canyon Fire, which was determined to have resulted from the reemergence of a pile burn that remained dormant under the surface since winter. Act, § 102(a)(2)–(4). The Fire grew to become the largest wildfire in New Mexico history, burning over 340,000 acres of forest

---

[1] On December 29, 2022, Congress provided additional funding for the Act's implementation in the Consolidated Appropriations Act, 2023, P.L. 117-328, 136 Stat. 4459.

and destroying at least 160 homes and over 900 structures. Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. 59730, 59773 (Aug. 29, 2023).

The HPCC Act contains a collection of provisions that detail the compensation that is available to claimants injured as a result of the Hermit's Peak/Calf Canyon Fire. First, the Act contains a general compensation provision stating that "[e]ach injured person shall be eligible to receive from the United States compensation for injury suffered by the injured person as a result of the [HPCC] Fire, subject to the availability of appropriations and subject to the Administrator[2] making the determinations required under subsection (d)." Act, § 104(a)(1). The term "injury" is defined as having "the same meaning as the term 'injury or loss of property, or personal injury or death' as used in section 1346(b)(1) of title 28, United States Code." Act, § 103(5).

This general statement as to compensation is qualified in several respects. First, the Act contains an "Extent of Damages" provision that contains certain limitations on the damages that are available for compensable injuries. The provision states: "Extent of damages.—Any payment under this Act—(A) shall be limited to actual compensatory damages measured by injuries suffered; and (B) shall not include—(i) interest before settlement or payment of a claim; or (ii) punitive damages." Act, § 104(c)(3). In addition, the Act contains an "Allowable Damages" provision that lists three broad categories of damages—"Loss of Property," "Financial Loss," and "Business Loss"—each with subcategories of damages, that may be paid in a claim for an injury. Act, § 104(d)(4). For example, Section 104(d)(4)(B) provides, "A claim that is paid for injury under this Act may

---

[2] The "Administrator" is defined as the Administrator of FEMA or the Manager of the Hermit's Peak/Calf Canyon Claims Office. Act, § 103(1).

include damages resulting from the [HPCC] Fire for the following types of otherwise uncompensated business loss," followed by a list of types of business loss. In each category of "Allowable Damages," the Act gives discretion to FEMA's Administrator to identify other subcategories of damages that may be recovered in a claim. *See, e.g.,* Act, § 104(d)(4)(A)(vi) (listing "any other loss that the Administrator determines to be appropriate for inclusion as loss of property."). Lastly, the Act provides that, "[e]xcept as otherwise provided in this Act, the laws of the State of New Mexico shall apply to the calculation of damages under subsection (d)(4)." Act, § 104(c)(2).

### b.   *FEMA Rulemaking Under the Act*

The HPCC Act also directed FEMA's Administrator to promulgate regulations for the processing and payment of claims under the Act. The Act provides, "Notwithstanding any other provision of law, not later than 45 days after the date of enactment of this Act, the Administrator shall promulgate and publish in the Federal Register interim final regulations for the processing and payment of claims under the Act." Act, § 104(f)(1). FEMA did so, publishing an interim final rule on November 14, 2022. "FEMA's procedures in the IFR were generally consistent with those established for claims associated with the Cerro Grande Fire Assistance Act," a law very similar to the HPCC Act that was enacted following the Cerro Grande Fire in New Mexico in 2000. 88 Fed. Reg. 59730.

FEMA solicited and received extensive public comment on the interim final rule, including six public meetings at which more than 100 comments were provided and the submission of more than 190 written comments. 88 Fed. Reg. 59732, 59767. These comments included several regarding the availability of non-economic damages. In

response, FEMA explained that the damages provisions in Section 104(c)(3)(A) and 104(d)(4) exclude non-economic damages:

> "The Act at section 104(c)(3)(A) limits payment to 'actual compensatory damages measured by injuries suffered.' Section 104(d) of the Act limits allowable damages to uncompensated damages for loss of property, business loss, and financial loss; and therefore, limits the actual compensatory damages FEMA may provide to economic damages. This limitation of the Act with respect to allowable damages excludes non-economic damages such as pain and suffering. FEMA recognizes that making people whole for the full scope of loss after a devastating fire may not be possible. The Act authorizes payment of damages, and money cannot restore the full array of the human experience."

88 Fed. Reg. 59743; *see also id.* (explaining in response to comment stating that claimants are entitled to nuisance and trespass damages under New Mexico law, that "[t]he Act does not authorize FEMA to provide non-economic damages for nuisance and trespass"); *id.* at 59744 (explaining in response to another comment that "[t]he Act does not provide for non-economic damages for emotional distress, disturbance, and annoyance").

Following this comment period, FEMA published its final regulations under the HPCC Act on August 29, 2023. 44 C.F.R. § 296 (the "Rule"). The Rule contains provisions regarding compensable damages that parallel the Act's language. First, there is a "Prerequisite to Damages" provision stating that "[i]n order to receive compensation under the Act, a claimant must be an Injured Person who suffered an injury as a result of the [HPCC] Fire and sustained damages." 44 C.F.R. § 296.20.

The Rule's next section, 44 C.F.R. § 296.21, is an "Allowable Damages" provision that mirrors the above-discussed limitations on recoverable damages in the HPCC Act. In Section 296.21(a), the Rule contains an overview of the damages provisions in Section 104 of the Act: "The Act provides for the payment of actual compensatory damages for injury

or loss of property, business loss, and financial loss. The laws of the State of New Mexico will apply to the calculation of damages. Damages must be reasonable in amount." *Compare* Act, §§ 104(c)(3) (providing for payment of actual compensatory damages), 104(d)(4) (providing for "allowable damages" of property loss, business loss, and financial loss), & 104(c)(2) (stating that New Mexico law will apply to the calculation of damages). 44 C.F.R. § 296.21(b) then provides for exclusions of certain categories of damages that are expressly exempted in the Act—such as those in Section 104(c)(3)(B)—or, like attorney's fees, that are contrary to other provisions of the Act. *See* Act, § 104(j) (limiting availability of attorney's fees for claims under the Act). Lastly, in Section 296.21(c) through (e), the Rule contains additional details on the categories of "allowable damages" contained in Section 104(d)(4) of the Act.

### c. *History of the Action*

Petitioners' action consists of a "challenge [to] an aspect of the final administrative rule titled 'Hermit's Peak/Calf Canyon Fire Assistance,' RIN 1660–AB14." Complaint, Doc. 1 ¶ 1. Petitioners contend that a "portion of the Rule should be set aside because it … categorically denies compensation for *any* noneconomic damages, including interference with personal comfort, annoyance, and inconvenience." *Id.*, ¶ 2. Petitioners further seek a declaratory judgment that the Rule is arbitrary and capricious, in excess of authority, and contrary to law. *Id.* at 21, "Prayer for Relief," ¶ 1. And Petitioners seek an injunction prohibiting Respondents from "categorically withholding, denying, or refusing to award noneconomic damages when awarding compensation under the HPFAA." *Id.* at 21, "Prayer for Relief," ¶ 3.  Petitioners seek the review of this Rule and their requested relief

under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. *Id.*, ¶ 7; *see also id.*, Counts I through III. There is a similar challenge to the availability of non-economic damages under the Rule in *Lands v. FEMA*, 1:23-cv-869-JB-JFR, that is scheduled to be heard concurrently with this action.

In *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994), the Tenth Circuit held that challenges to federal agency actions pursuant to the judicial review provisions of the APA are not subject to normal civil trial procedures:

> A district court is not exclusively a trial court. In addition to its *nisi prius* functions, it must sometimes act as an appellate court. Reviews of agency action in the district courts must be processed *as appeals*. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure.

*Olenhouse*, 42 F.3d at 1580; *see also WildEarth Guardians v. U.S. Forest Serv.*, 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009) ("Pursuant to *Olenhouse* . . . , claims under the APA are treated as appeals and governed by reference to the Federal Rules of Appellate Procedure."). Following this procedure, the Court directed the parties to prepare an administrative record and submit briefing on the merits of Petitioners' APA challenge. Doc. 15. *See also WildEarth Guardians*, 668 F. Supp. 2d at 1323 (noting that the case was being resolved on the merits based on briefing that "is consistent with the Federal Rules of Appellate Procedure" and the Court's scheduling order). Petitioners filed an opening brief pursuant to this procedure and order, to which this brief responds. Pls.' Op. Br., Doc. 44 ("Dolan Br.").

**STATEMENT OF THE ISSUES**

Whether FEMA's Rule implementing the HPCC Act is contrary to law, in excess of authority, or arbitrary and capricious in not providing for non-economic damages, including emotional distress, inconvenience, discomfort, and annoyance?

Petitioners' Statement of Issues mistakenly frames this action, not as one under the APA's review elements, but as turning on a flawed interpretation of the HPCC Act. Dolan Br. at 5. Petitioners' first issue assumes that the HPCC Act incorporates the Federal Tort Claims Act's private-party analog, making damages under the Act coextensive with a private party's liability under state law, despite the HPCC Act's different language. Petitioners' second issue is a limited question regarding the existence of a private-party analog under the HPCC Act that is not directly connected to review under the APA. The question presented by this action is whether the Rule's exclusion of non-economic damages is contrary to the HPCC Act.

**ARGUMENT**

**I.     Standard of Review**

Pursuant to Section 706(2) of the APA, the reviewing court may only set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C).

Review under the APA requires a 'searching but careful' inquiry into the basis for the agency's action, but the Court's review is "ultimately a narrow one." *Firestorm*

*Pyrotechnics, Inc. v. Dettelbach,* 61 F.4th 768, 774–75 (10th Cir. 2023) (quoting *Maier* v. *EPA,* 114 F.3d 1032, 1039 (10th Cir. 1997)). The Court may not set aside agency action "unless it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *U.S. Magnesium, LLC* v. *EPA,* 690 F.3d 1157, 1164 (10th Cir. 2012).

"'When we review an agency's decision under the arbitrary, capricious or abuse of discretion standard, our review is narrow and deferential; we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors.'" *Slingluff v. Occupational Safety & Health Rev. Comm'n,* 425 F.3d 861, 866 (10th Cir. 2005) (quoting *Mountain Side Mobile Estates P'ship v. Sec'y of HUD,* 56 F.3d 1243, 1250 (10th Cir. 1995)). In applying this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project,* 141 S. Ct. 1150, 1158 (2021). "However, these limitations do not apply to questions of law." *Slingluff,* 425 F.3d at 866 (internal quotation marks and citation omitted). Section 706 of the APA requires that, "[t]o the extent necessary for decision and when presented, the reviewing court shall decide all relevant questions of law." 5 U.S.C. § 706.

The APA authorizes courts to set aside agency actions that are taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The Court should "consider agency action in conformity with the agency's statutory grant of power," and may find agency action unlawful it if exceeds the agency's authority. *Sinclair Wyo. Refin. Co.* v. *EPA,* 887 F.3d 986, 990 (10th Cir. 2017); *Copar Pumice Co. v. Tidwell,* 603 F.3d 780, 801 (10th Cir. 2010) ("[A]n essential function of our review

under the APA is determining whether an agency acted within the scope of its authority."); *Olenhouse*, 42 F.3d at 1574.

## II.     The HPCC Act's Waiver of Sovereign Immunity Does Not Include Non-Economic Damages

Both the HPCC Act and FEMA's Rule implementing the Act do not extend the United States' waiver of sovereign immunity to claims for non-economic damages. As a result, the Rule's exclusion of non-economic damages from the available compensation for claims under the HPCC Act is neither contrary to law, arbitrary and capricious, or in excess of FEMA's authority.

To begin, the Act itself limits the United States' waiver of sovereign immunity—and the related availability of damages—in several ways. The Act's compensation provisions start with a "general" statement that injured persons are eligible for compensation "for injury suffered by the injured person as a result of the [HPCC] Fire, subject to the availability of appropriations and subject to the Administrator making the determinations required under subsection (d)." Act, § 104(a)(1). Subsection (d) then directs the Administrator to determine the amount of payments to be made under the Act. Act, § 104(d)(1)(B)(iv).

Critically, subsection (d) also contains a provision titled "Allowable Damages" that lists categories of damages that "[a] claim that is paid ... under this Act may include." Act, § 104(d)(4). These "allowable damages" are "loss of property," "business loss," and "financial loss," each with identified subcategories. Act, § 104(d)(4)(A), (B), (C). The subcategories themselves include catch-all provisions of "[a]ny other loss that the Administrator determines to be appropriate for inclusion as loss of property[, business

loss, or financial loss.]" Act, § 104(d)(4)(A)(vi), (B)(vi), (C)(x). These categories of "allowable damages" do not encompass the non-economic damages Petitioners seek. Although the Act calls for the application of New Mexico law, such application is limited to calculating damages in Section 104(d)(4)'s categories of "allowable damages." The Act provides that "the laws of the State of New Mexico shall apply *to the calculation of damages under subsection (d)(4)*." Act, § 104(c)(2) (emphasis added).

Finally, Section 104(c)(3) of the Act is an "Extent of Damages" clause that provides further limits on "[a]ny payment[s] under this Act." This provision operates as a limitation on otherwise permissible damages by stating that payments "shall be limited to actual compensatory damages measured by injuries suffered" and "shall not include" pre-judgment interest or punitive damages. Act, § 104(c)(3)(A), (B). That the "Extent of Damages" provision is best read as a limitation on the "Allowable Damages" clause in Section 104(d)(4) is elucidated by the fact that if the "Extent of Damages" limitations did not exist, otherwise recoverable property, business, or financial losses could include non-compensatory damages, such as statutory damages, punitive damages or pre-judgment interest. Respondents' reading together of these two clauses gives meaning to every word of the Act. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128–29 (2018) (noting that the Court, absent clear evidence of Congressional intent, rejects interpretations that create surplusage but "is 'obliged to give effect, if possible, to every word Congress used." (*quoting Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).

This interpretation of the Act as containing limiting provisions that should be read together to determine the scope of available damages is further supported by the

principle that waivers of the Government's sovereign immunity must be explicit and narrowly construed. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (holding that waiver of sovereign immunity must be strictly construed in favor of the government and read no more broadly than its terms require). As discussed in the Administrative Record, in interpreting the meaning of the term "actual damages" in the Privacy Act, the Supreme Court in *FAA v. Cooper* pointed to the "canon of interpretation requir[ing] an unmistakable statutory expression of congressional intent to waive the Government's immunity." 566 U.S. 284, 291 (2012); AR 2652 (discussing this opinion in explaining the basis for FEMA's interpretation of the HPCC Act as not providing non-economic damages). The Court in *Cooper* explained that, in interpreting the term "actual damages" to determine the scope of the United States' waiver of sovereign immunity, the Court would "refuse to enforce a waiver that is not unambiguously expressed in the statute" and "construe any ambiguities in the scope of a waiver in favor of the sovereign." 566 U.S. at 291. If "the scope of Congress' waiver" is not "clearly discernable from the statutory text in light of traditional interpretive tools," "then we take the interpretation most favorable to the Government." *Id.*; *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" (citation omitted)). As a result, the Court concluded that because the Privacy Act's reference to "actual damages" did not "unequivocally authorize an award of damages for mental or emotional distress" it "does not waive the Federal Government's sovereign immunity for such harms." *Cooper*, 566 U.S. at 304.

The *Dolan* Petitioners' attempts to distinguish *FAA v. Cooper* are unavailing. Dolan Br. at 30–33. They first argue that the Privacy Act's reference to "actual damages" arises in the context of analogous torts for libel and slander which require actual pecuniary harm, suggesting that Congress may have intended "actual damages" to exclude non-pecuniary damages. Dolan Br. at 31–32; *see also* Op. Br. of Pls. Marianna Lands & Charles Paynter ("Lands Br."), Doc. 41, *Lands v. FEMA*, 1:23-cv-869-JB-JFR, at 19–20 (making similar argument). This attempted distinction, however, only spotlights the more fundamental holding in *Cooper* that Petitioners do not rebut: that statutory language must be read in context and ambiguities resolved in the Government's favor. As the Court explained, "the question we must answer is whether it is plausible to read the statute, as the Government does, to authorize only damages for economic loss." *Cooper*, 566 U.S. at 299. The "term 'actual damages' can mean different things in different contexts" under federal law. *Id.* at 301; *see also id.* at 292–93 (noting instances where term is used both to "include nonpecuniary harm" and "more narrowly to authorize damages for only pecuniary harm"); *id. at* 294 n.4 (noting that Black's Law Dictionary definition of "actual damages" being "tangible damages" supports interpretation of term that excludes "intangible harm, like mental and emotional distress"). And in the HPCC Act, the term "actual damages" is further limited by the insertion of the term "compensatory." This phrase, "actual compensatory damages" must be read together with the other damages provisions in the HPCC Act, including Section 104(d)'s categorical statement of "allowable damages." *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 768–69 (2018) (noting that provisions of statute must be read together where possible so as to give effect to both parts of law).

The *Dolan* Petitioners also offer the argument that "*Cooper* emphasized the absence of any text in the Privacy Act that might 'unequivocally authorize[] an award of damages for mental or emotional distress'" whereas the HPCC Act "expressly invoked New Mexico law for claimants' damages" which "permits noneconomic damages for discomfort, annoyance, and inconvenience." Dolan Br. at 33 (quoting *Cooper*, 566 U.S. at 304). Not only does the HPCC Act, however, not "unequivocally authorize" non-economic damages, it expressly limits available damages to specific categories of pecuniary harm. Act, § 104(d)(4). And New Mexico law is not "invoked ... for claimants' damages" generally, but limited to the calculation of such damages within these limited categories. *See infra* pp. 19–20. As a result, the *Dolan* Petitioners' contention that "Congress surely would have expressly excluded noneconomic damages" had it so intended, Dolan Br. at 29, is mistaken. Congress did exclude noneconomic damages by listing the allowable damages and omitting damages for discomfort, annoyance, inconvenience, or other noneconomic damages. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 232–33 (2011) (applying "expressio unius, exclusio alterius" canon where statute omits category of liability to exclude such liability as "deliberate choice, not inadvertence" (internal quotation marks and citation omitted)).[3]

In fact, the Court here need not, as in *Cooper,* determine whether the phrase "actual damages" or "actual compensatory damages" is ambiguous as to whether it

---

[3] This existing limitation on allowable damages in Section 104(d)(4) further explains why, unlike the FTCA's provision defining the scope of the United States' liability in certain wrongful death cases, it was unnecessary in the HPCC Act to redundantly limit damages in the HPCC Act to "pecuniary injuries." *See* Dolan Br. at 27–28 (discussing 28 U.S.C. § 2674).

encompasses non-economic damages at all. That is because, regardless of how the limitation of damages to "actual compensatory damages" in the HPCC Act is interpreted, the Act's other limitation on damages in Section 104(d)(4) to property loss, business loss, and economic loss excludes non-economic damages. "[B]ecause the [HPCC] Act waives the Federal Government's sovereign immunity, the question we must answer is whether it is plausible to read the statute, as the Government does, to authorize only damages for economic loss." 566 U.S. at 299. Interpreting the "Allowable Damages" provision in Section 104(d)(4) "in favor of the sovereign," as the Court must, results in a waiver of sovereign immunity that does not extend to non-economic damages. 566 U.S. at 291.

Indeed, not only is the Government's interpretation of the "Allowable Damages" provision as containing an independent limitation on the categories of damages claimants may obtain plausible, it is the superior interpretation. Viewing the "Extent of Damages" clause in Section 104(c)(3) as the only source of limits on damages claimants may obtain would render the Act's categories of allowable damages surplusage. *See Nat'l Ass'n of Mfrs.*, 583 U.S. at 128 (noting that Court will reject interpretation of statute that renders clause meaningless absent clear Congressional intent); *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (rejecting interpretation of statute that would render provision "practically devoid of significance"). By contrast, FEMA's interpretation of the "Extent of Damages" clause as limiting those damages available within Section 104(d)(4)'s categories of "Allowable Damages" gives meaning to both clauses.

One more canon of construction supports FEMA's interpretation of Section 104(d)(4) as providing an exclusive list of claimants' allowable damages. Unlike the

general statement regarding available damages in Section 104(a)(1), or the limitation to "actual compensatory damages" in Section 104(c)(3), Section 104(d)(4) provides a specific list of the categories of allowable damages. As a result, if there is any conflict between the Act's general provisions regarding the availability of damages and the specific categories of available damages in Section 104(d)(4), the latter are controlling. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) ("'It is an old and familiar rule that, where there is, in the same statute, a particular enactment and also a general one ... the particular enactment must be operative....'" (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)). "A specific provision controls over one of more general application." *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991).

For these reasons, the HPCC Act is correctly interpreted as limiting the availability of damages to economic damages for property loss, business loss, and financial loss. FEMA's rulemaking in keeping with this interpretation of the Act was neither contrary to law, in excess of authority, or arbitrary and capricious.

### III. Petitioners' Arguments for an Interpretation of the HPCC Act Permitting Claims for Non-Economic Damages Are Unpersuasive

Petitioners offer a series of critiques of FEMA's interpretation of the HPCC Act as not encompassing non-economic damages. These arguments fail to establish that this interpretation of the HPCC Act, as reflected in the Rule, is incorrect. Nor can Petitioners meet their higher burden of establishing that FEMA's interpretation is so implausible that Congress unmistakenly intended to waive the Government's sovereign immunity for non-economic damages claims in the HPCC Act.

First, Petitioners argue that the HPCC Act incorporates the scope of liability contained in the Federal Tort Claims Act, which makes the United States liable for damages "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *See also* Lands Br. at 10; Dolan Br. at 2, 11, 25–26. Petitioners read the HPCC Act's definition of "injury," which is given "the same meaning as the term 'injury or loss of property, or personal injury or death' as used in section 1346(b)(1) of title 28, United States Code," as broadly incorporating the FTCA's liability provisions. Act, § 103(5).

The HPCC Act, however, does not incorporate the FTCA's liability provision in 28 U.S.C. § 2674 or any other part of the FTCA. The HPCC Act only borrows the definition of "injury" from 28 U.S.C. § 1346, which isn't formally part of the FTCA at all, even if it references the law. Rather than incorporating scope of liability provisions from the FTCA, the HPCC Act contains its own damages provisions that identify what remedies are available for "injuries" under the Act. Act, §§ 104(a)(1), (c)(3)(A), (d)(4)(B), (C) (all defining damages that are available for "injuries" under the Act). Petitioners' arguments, on the other hand, attempt to bootstrap much broader sections of the FTCA—including its private person analog in 28 U.S.C. § 2674—through this definition of "injury." Dolan Br. at 11; Lands Br. at 14. Had Congress wished to incorporate larger segments of the FTCA, it would have done so explicitly. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 454 (2002) (declining to read into statute language that Congress could have incorporated "clearly and explicitly").

Further, even if the incorporation of 28 U.S.C. § 1346(b)(1)'s definition of "injury" encompasses New Mexico law as to what constitutes cognizable harm under the HPCC Act, it does not incorporate the FTCA for the purposes of defining what damages are recoverable for the injury. The damages that flow from any injury are not the injury itself, but the compensation available to a claimant as a result of their injury. *See Memphis Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986) (explaining that damages provide compensation for injury); *Carroll v. Los Alamos Nat. Sec., LLC*, 704 F. Supp. 2d 1200, 1221 (D.N.M. 2010) (Browning, J.) (noting that "New Mexico law draws a distinction between the injury that gives rise to a claim, the harm that results from the injury, and the damages that the injured party can recover"). And the scope of "allowable damages" for any injury is defined by the HPCC Act's terms. Act, § 104(d)(4).

Section 104(c)(2) also does not incorporate New Mexico law for the purpose of defining available damages under the HPCC Act. Petitioners contend that the HPCC Act "states that, except for 'interest before settlement' and 'punitive damages,' 'the laws of the State of New Mexico shall apply to the calculation of damages.'" Dolan Br. at 11 (quoting Act, § 104(c)(2)); *see also* Dolan Br. at 25. This quotation of Section 104(c)(2), however, omits language in the Act limiting the scope of its incorporation of New Mexico law. Not only is New Mexico law only applied to determine the *calculation* of damages, not the identification of which types of damages apply, *see supra* pp. 12, 15, but this application is limited "as otherwise provided in th[e] Act." Act, § 104(c)(2). More crucially, Section 104(c)(2) provides that "the laws of the State of New Mexico shall apply to the calculation of damages *under subsection (d)(4)*." *Id.* (emphasis added). That is, only once there are

recoverable damages that fall within three categories of "allowable damages" in Section 104(d)(4) is New Mexico law applied to calculate their amount. In fact, because certain damages available under the Act would not be available under New Mexico law, Petitioners' reading of Section 104(c)(2) as incorporating New Mexico law more broadly would nullify these damages provisions. *See, e.g.,* Act, § 104(d)(C)(vii) (providing for risk reduction costs as part of financial loss damages); 88 Fed. Reg. 59757 (noting that compensation to reduce risks "would not generally otherwise be available in litigation under New Mexico law").[4]

Petitioners next contend that, notwithstanding the HPCC Act's provision setting forth "allowable damages," the "Extent of Damages" provision in Section 104(c)(3) should be read as the only limitation on available damages in the Act. Lands Br. at 17–18; Dolan Br. at 2, 11, 25. This reading of the Act, however, renders superfluous other provisions in the law defining and limiting damages. As discussed above, Respondent's interpretation of the Act is preferable in that it gives meaning to both Section 104(d)'s definition of

---

[4] Because the HPCC Act does not incorporate New Mexico law for the purpose of determining the types of allowable damages that a claimant may recover, the Court need not determine in what circumstances a New Mexico court would permit non-economic damages from a forest fire. Furthermore, even if the Court were to conclude that the HPCC Act unambiguously permits the recovery of non-economic damages, Petitioners' claims for such damages should be remanded to FEMA for determination. For instance, whether there is a viable claim for trespass, as opposed to nuisance, in any particular claimant's circumstance may depend on the incursion of the Fire onto their property. *See Padilla v. Lawrence,* 1984-NMCA-064, ¶ 26, 101 N.M. 556, 563, 685 P.2d 964, 971 ("Where there is no physical invasion of property, as with intangible intrusions of noise and odor, the cause of action is for nuisance rather than for trespass."). As well, the availability of emotional distress damages requires a claim for intentional or negligent infliction of emotional distress or a party to establish "loss of consortium, intentional misconduct, defamation, or a physical injury." *Castillo v. City of Las Vegas,* 2008-NMCA-141, ¶ 10, 145 N.M. 205, 210–11, 195 P.3d 870, 875–76.

allowable damages and the limitations on such damages in Section 104(c). *See supra* p. 12; *Leocal*, 543 U.S. at 12 ("[W]e must give effect to every word of a statute wherever possible.").

Faced with the clear language of Section 104(d)(4) listing "allowable damages," Petitioners offer unpersuasive alternative readings of the provision. Petitioners suggest that despite its plain language listing "Allowable Damages," Section 104(d)(4) should be interpreted as identifying "damages available to claimants *in addition to* damages available under New Mexico law." Dolan Br. at 13; *see also* Dolan Br. at 34. Petitioners' argument rests on the contention that the term "include" is non-exclusive. Dolan Br. at 34. While generally true, several factors merit a narrower reading here. First, the word "include" follows "may," which here is defining the permissible damages that may be obtained under the Act. *See* Black's Law Dictionary, "May," (12th ed. 2024) (including definitions of "may" as "To be permitted to" and "Loosely, is required to; shall; must"). Second, Petitioners' non-exclusive interpretation would contradict the phrase "allowable damages," which defines the listed damages as those that are permitted. *See* Black's Law Dictionary, "Allowable," (12th ed. 2024) (defining "allowable" as "Acceptable according to the rules; permissible"). Lastly, Petitioners' interpretation of Section 104(d)(4) as supplementing the allowable damages under New Mexico law would render much of the provision superfluous because damages like uninsured property loss, damage to inventory, business interruption, and relocation expenses would already be available under New Mexico law.

Petitioners' argument that FEMA interpreted similar language in the Cerro Grande Fire Assistance Act differently also fails to refute FEMA's interpretation here. Dolan Br. at 35. Initially, FEMA interpreted the Cerro Grande Act—like the HPCC Act—as precluding non-economic damages. AR 2650 & n.3, 2652–53 (noting that non-economic damages were not paid under the Cerro Grande Act); AR 7492 (noting, in Cerro Grande Policy Guidelines, that damages for pain and suffering are not available). FEMA's rule promulgated under the Cerro Grande Act limited damages to "real, substantial and just money damages." 44 C.F.R. § 295.21(a). Petitioners' description of the Cerro Grande Rule as listing the categorical damages of property loss, business loss, and financial loss as "in addition" to damages available under New Mexico misportrays the rule's language. Dolan Br. at 35. In describing the Cerro Grande Act's allowable compensation, the rule first noted that "[i]n general," injured persons would be compensated to the extent a private party would be under New Mexico law before stating that "[i]n addition," the Cerro Grande Act permits FEMA to compensate injured parties for the three, categorical types of damages. 44 C.F.R. § 295.21(a). These introductory clauses of "in general" and "in addition" introduce the rule's summary of the Cerro Grande Act's broad and more specific damages provisions; they do not provide a definition of the total scope of damages under the Act. Lastly, to the extent the Cerro Grande Act's language was interpreted differently than the HPCC Act, the interpretation provided in the HPCC Rule is the best reading of the statutory language. Unlike with the Cerro Grande Act, where no comments regarding non-economic damages are apparent from the rulemaking, *see generally* Disaster Assistance; Cerro Grande Fire Assistance, 66 Fed. Reg. 15948 (Mar. 21, 2001), FEMA

carefully considered whether the language of the HPCC Act could support claims for non-economic damages. *See supra* pp. 5–6.

FEMA's interpretation of the HPCC Act's damages provisions as not encompassing claims for non-economic damages is the best reading of the Act. It is both the only reading that gives meaning to all provisions of the Act and the most faithful reading of Section 104(d)'s listing of "allowable damages." The Court need not determine, however, that FEMA's interpretation of the Act is the optimal one. Because the HPCC Act's waiver of sovereign immunity must be construed in favor of the Government and read narrowly, so long as FEMA's interpretation of the Act is a plausible one—and Congress did not unequivocally provide for non-economic damages—it should be upheld. *Cooper*, 566 U.S. at 299.

**CONCLUSION**

For the following reasons, the HPCC Rule's exclusion of non-economic damages, including damages for discomfort, annoyance, inconvenience, and emotional distress, is not contrary to law, in excess of authority, or arbitrary and capricious. FEMA respectfully requests that the Court dismiss Petitioners' action or, in the alternative, enter judgment for Respondent.

To the extent the Court concludes that Petitioners are entitled to any relief, FEMA requests that the Court remand the Rule to the Agency for further proceedings in accordance with the Court's interpretation of the HPCC Act. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (per curiam) (noting that where "the record before the agency does not support the agency action ... the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation"). Remand will permit FEMA to assess claimants' eligibility for non-economic damages, the priority and amount of such damages, and the standard of proof for such damages—both programmatically and as applied to individual claims.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

_/s/ Nicholas M. Sydow 9/13/24_
Nicholas M. Sydow
Brett C. Eaton
Assistant United States Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87103
(505) 224-1460
nicholas.sydow@usdoj.gov
brett.eaton@usdoj.gov
**_Attorneys for Respondents_**

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY, that according to the word count function in Microsoft Word for Microsoft 365 MSO Version 2402, there are 6,470 words in the body of this brief, within the 13,000 type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

_/s/ Nicholas M. Sydow 9/13/24_
Nicholas M. Sydow
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 13, 2024, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

<u>/s/ Nicholas M. Sydow 9/13/24</u>
Nicholas M. Sydow
Assistant United States Attorney
