UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

TOBIN DOLAN, ET AL.,

     *Plaintiffs,*

  v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY; ET AL.,

     *Defendants.*

No. 23-cv-00908-JB-JFR

**PLAINTIFFS' REPLY BRIEF**

## TABLE OF CONTENTS

Table of Authorities ................................................................ iii

Introduction .......................................................................... 1

Argument .............................................................................. 3

1. The HPFAA waives sovereign immunity for
damages available in New Mexico, less the
items in section 104(c)(3), but plus the items
in section 104(d)(4). ......................................................... 3

    1.1. Plaintiffs' reading of the HPFAA is
faithful to its text, and gives meaning to
all its provisions. .................................................... 3

    1.2. FEMA's contrary reading is hypocritical,
atextual, and renders provisions
superfluous. ............................................................ 14

    1.3. FEMA's reading is not entitled to any
deference .................................................................. 19

2. There is nothing for this Court to "remand"
regarding Plaintiffs' entitlement to
noneconomic damages for annoyance and
discomfort. ....................................................................... 23

Conclusion ............................................................................ 24

Certificate of Compliance .................................................... 26

Certificate of Service ........................................................... 27

## TABLE OF AUTHORITIES

### Cases

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*,
340 U.S. 593 (1951) ................................................... 18

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) ................................................... 8

*Carter v. United States*,
530 U.S. 255 (2000) ................................................... 5

*Chevron U.S.A. Inc. v. Echazabal*,
536 U.S. 73 (2002) ................................................11, 17

*Chevron U.S.A. Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) ................................................... 20

*Dalehite v. United States*,
346 U.S. 15 (1953) ................................................... 9

*Employers' Fire Ins. Co. v. United States*,
167 F.2d 655 (9th Cir. 1948) ..................................... 22

*FCC v. Prometheus Radio Project*,
141 S.Ct. 1150 (2021) ................................................ 20

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) ................................................ 6

*Kosak v. United States*,
465 U.S. 848 (1984) ................................................... 8

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ...........................................20, 21

*Morga v. Fedex Ground Package Sys., Inc.*,
　　420 P.3d 586 (N.M. Ct. App. 2018) ........................... 15

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
　　583 U.S. 109 (2018) .................................................... 18

*Richards v. United States*,
　　369 U.S. 1 (1962) ........................................................ 9

*Samantar v. Yousuf*,
　　560 U.S. 305 (2010) .................................................... 6

*Sunnyside Coal Co. v. Dir., Off. of Workers' Comp.
　　Programs, United States Dep't of Lab.*,
　　112 F.4th 902 (10th Cir. 2024) .................................. 21

*TransUnion LLC v. Ramirez*,
　　594 U.S. 413 (2021) .................................................... 5

*United States v. Muniz*,
　　374 U.S. 150 (1963) .................................................... 8

*United States v. New York Tel. Co.*,
　　434 U.S. 159 (1977) .................................................... 6

*United States v. Shaw*,
　　309 U.S. 495 (1940) .................................................. 22

*United States v. Yellow Cab Co.*,
　　340 U.S. 543........................................... 4, 9, 10, 18, 22

*W. Air Lines, Inc. v. Bd. of Equalization of State of S.D.*,
　　480 U.S. 123 (1987) .................................................. 20

*Wichita Ctr. for Graduate Med. Educ., Inc. v.
　　United States*,
　　917 F.3d 1221 (10th Cir. 2019) .................................. 6

## Statutes

28 U.S.C.
    § 1346 ............................................ 3, 4, 7, 8, 9, 10, 11, 22
    § 2671 .......................................................................... 8
    § 2674 ........................................................................ 10

## Regulations

44 C.F.R. § 295.21 .................................................... 14, 16

## Federal Rules

Federal Rules of Appellate Procedure Rule 32 ................. 26

## State Rules

New Mexico Appellate Court
    Rule 2652 ............................................................... 8, 10
    Rule 7492 .................................................................. 15

## Other Authorities

66 Fed. Reg. 15948 (Mar. 21, 2001) .................................. 16

88 Fed. Reg. 59,757 ................................................... 7, 12

## INTRODUCTION

This action arises out of the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA"), which seeks to compensate victims of the Hermit's Peak/Calf Canyon Fires.

FEMA's final rule categorically precludes payment of noneconomic damages under the HPFAA. As Plaintiffs explained in their opening brief, that rule is contrary to law and should be set aside for two reasons:

First, New Mexico law permits noneconomic damages for annoyance and discomfort for victims who suffer property damage from nuisance or trespass.

Second, the HPFAA requires FEMA to compensate claimants to the same extent as a private party would be liable for damages under New Mexico law, except for interest and punitive damages.

In its respondent's brief, FEMA does not even attempt to refute Plaintiffs' argument that, under New Mexico law, a party that commits a nuisance or trespass is liable for noneconomic damages for discomfort, annoyance, and inconvenience. (*See* RB 20, n.4.) Rather, FEMA argues that HPFAA expressly prohibits recovery of noneconomic damages.

But as discussed below, the HPFAA is best read as generally waiving sovereign immunity for any damages available under New Mexico law, minus the items listed in section 104(c)(3)(A)–(B), but adding the items listed in section 104(d)(4). That reading of the statute is faithful to its text, and gives meaning to all its provisions. And under that reading of the HPFAA, FEMA's final rule is contrary to law and must be set aside.

FEMA's contrary reading of the statute is hypocritical, atextual, and renders significant provisions superfluous. Moreover, even if it were not patently unreasonable, FEMA's contrary reading is not entitled to any deference.

Accordingly, this Court should enter judgment for Plaintiffs and set aside FEMA's final rule prohibiting noneconomic damages for property losses under the HPFAA.

ARGUMENT

**1.     The HPFAA waives sovereign immunity for damages available in New Mexico, *less* the items in section 104(c)(3), but *plus* the items in section 104(d)(4).**

**1.1.   Plaintiffs' reading of the HPFAA is faithful to its text, and gives meaning to all its provisions.**

The HPFAA defines the scope of the Government's sovereign-immunity waiver in three steps:

**[1]** Sections 102(b)(1) and 103(5) state a general waiver of sovereign immunity for any damages available under New Mexico law.

Section 102(b)(1) ("Purpose") states that the express "Purpose" of the Act is "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for *injuries* resulting from the fire." Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. at 2169 (emphasis added).

Section 103(5) ("Definitions") then defines "injury" as having "the same meaning as the term 'injury or loss of property, or personal injury or death' as used in section 1346(b)(1) of title 28, United States Code." Pub. L. No. 117-180, § 103(5), 136 Stat. at 2169.

And 28 U.S.C. § 1346(b)(1) in turn gives district courts jurisdiction to enter judgments against the United States for

3

"money damages" for "injury or loss of property" to the same extent as "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (Emphasis added.) The Supreme Court has long understood that text as "a clear and sweeping waiver of immunity from suit on all claims" under the law of the state where the incident occurred, subject only to "well defined exceptions." *United States v. Yellow Cab Co.*, 340 U.S. 543, 548, fn. 5 (1951).

Thus, by invoking 28 U.S.C. § 1346 to define compensable injuries under the HPFAA, sections 102(b)(1) and 103(5) constitute "a clear, sweeping" waiver of sovereign immunity for any damages available under New Mexico law, subject only to well-defined exceptions.

**[2]** Section 104(c)(3) ("Extent of Damages") provides two well-defined exceptions to the waiver of sovereign immunity for damages available under New Mexico law.

First, it states that "any payment under the act … *shall be limited to* actual compensatory damages." Pub. L. No. 117-180, § 104(c)(3)(A), 136 Stat. at 2170 (emphasis added).

Second, it states that "any payment under the act … *shall not include* … (i) interest before settlement or payment of the claim, and (ii) punitive damages." Pub. L. No. 117-180, § 104(c)(3)(B),136 Stat. at 2170 (emphasis added).

Neither precludes noneconomic damages for property loss: Not even FEMA contends damages are interest nor punitive damages. And "actual compensatory damages" does *not* preclude noneconomic damages. (AOB 27–30.) On the contrary, that phrase must be given its common-law meaning (AOB 27, citing *Carter v. United States*, 530 U.S. 255, 265 (2000)), and at common law, "actual compensatory damages" typically *includes* noneconomic damages (AOB App'x A), especially where a nuisance or trespass results in property damage (AOB App'x B).

Instead, as FEMA contends, the reference to "actual compensatory damages" in the HPFAA is best read as precluding "statutory damages." (RB 12); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 419 (2021) (drawing distinction between "actual damages" and "statutory damages").

**[3]** Finally, section 104(d)(4) ("Allowable Damages") *extends* the waiver of sovereign immunity to certain damages that might otherwise be unavailable under New Mexico law.

Section 104(d)(4) does so when it states that a claim for property loss, business loss, and financial loss "may include otherwise uncompensated damages," then lists several damage items. Pub. L. No. 117-180, § 104(d)(4)(A)(i)–(vi), (B)(i)–(vi), (C)(i)(vii), 136 Stat. at 2172. That text is best read as an *expansion* provision for two reasons:

First, it uses the word "include," which the Supreme Court, Tenth Circuit, legal scholars, and dictionaries all construe as *nonexhaustive*. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196–97 (2021) (explaining that the factors listed in a federal statute are "not exhaustive" because they are introduced by the word "include"); *Samantar v. Yousuf*, 560 U.S. 305, 316–17 & n.10 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."); *United States v. New York Tel. Co.*, 434 U.S. 159, 169 (1977) (holding that when a statute introduces a list of factors with the word "include," courts are not bound by that list and may consider other factors not provided); *Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1224 (10th Cir. 2019) (holding that "include" means "that the enumerated entities are not exclusive."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 132–33 (2012) (explaining that "include does not ordinarily introduce an exhaustive list" but "introduces examples"); *Include*, Websters Third New International Dictionary (2002) ("to ... list ... as part of a larger group, class, or aggregate").

Second, it refers to "otherwise uncompensated damages." Pub. L. No. 117-180, § 104(d)(4)(A)(i)–(vi), (B)(i)–(vi), (C)(i)(vii), 136 Stat. at 2172. Of course, "otherwise

uncompensated" must be read in the context of sections 102(b)(1) and 103(5), which—by incorporating 28 U.S.C. § 1346—only waive sovereign immunity up to the limits of New Mexico law. Thus, when section 104(d)(4) refers to "otherwise uncompensated" damages, it is referring to otherwise uncompensated damages *under New Mexico law*.

Third, in a catch-all provision, FEMA's only determinative role under section 104(d)(4) is to *further expand* the universe of compensable damages beyond even those additional categories listed in section 104(d)(4). Pub. L. No. 117-180, § 104(d)(4)(A)(vi), (B)(vi), (C)(vii), 136 Stat. at 2172.

FEMA actually agrees section 104(d)(4) was written— and functions—as an expansion provision: FEMA agrees it is "generally true" the word "include" connotes a *nonexhaustive* list. (RB 21.) And FEMA agrees section 104(d)(4) permits damages that "'would not generally otherwise be available in litigation under New Mexico law.'" (RB 20, quoting 88 Fed. Reg. 59,757; *see also* RB 20 ("certain damages available under the Act would not be available under New Mexico law").

\*        \*        \*

In sum, Plaintiffs' interpretation of the HPFAA—in which it waives sovereign immunity for any damages available under New Mexico law, subject only to the

limitations in section 104(c)(3), and additions in section
104(d)(4)—is faithful to the statute's text, and gives meaning
to all relevant provisions.

None of FEMA's counterarguments disturb that
conclusion.

**First**, even though FEMA concedes sections 102(b)(1)
and 103(5) invoke 28 U.S.C. § 1346 for the definition of
"injury," FEMA denies the HPFAA mirrors the FTCA's
"sweeping" waiver of sovereign immunity.

Here, FEMA first contends that "28 U.S.C. § 1346 …
isn't formally part of the FTCA at all." (RB 18.)

But in construing 28 U.S.C. § 1346 as part of the
FTCA, Plaintiffs were following FEMA's lead: In a memo
titled "FEMA Legal Analysis of Noneconomic Damages" (AR
2652–2654), FEMA conceded the HPFAA requires FEMA to
"follow[] the *Federal Tort Claims Act, 28 U.S.C. § 1346(b)
('FTCA')* when determining the substantive tort law
applicable to paying claims." (AR 2652 (emphasis added).)

Indeed, for decades the Supreme Court has
consistently referred to 28 U.S.C. § 1346 as part of the
FTCA. *See, e.g., Ali v. Fed. Bureau of Prisons*, 552 U.S. 214,
217 (2008) (citing the Federal Tort Claims Act as consisting
of "28 U.S.C. §§ 1346, 2671 *et seq*."); *accord Kosak v. United
States*, 465 U.S. 848, 850 (1984); *United States v. Muniz*, 374

U.S. 150, 150 n.1 (1963); *Dalehite v. United States*, 346 U.S. 15, 17 (1953); *Yellow Cab*, 340 U.S. at 548, n. 5. In fact, the Supreme Court regards 28 U.S.C. § 1346 as "[t]he principal provision of the Federal Tort Claims Act." *Richards v. United States*, 369 U.S. 1, 6 (1962).

Nor is it odd the HPFAA would borrow the FTCA's sweeping waiver of sovereign immunity. On the contrary, as the Supreme Court observed, Congress regards relief acts (like the HPFAA) and FTCA claims as functional equivalents, and thus there is "no reason for reading into [them] fine distinctions between various types of such claims." *Yellow Cab*, 340 U.S. at 548–49; *see also* Pub. L. No. 117-180, § 104(h)(1), 136 Stat. at 2174 ("An injured person may elect to seek compensation from the United States for 1 or more injuries resulting from the Hermit's Peak/Calf Canyon Fire by" (A) "submitting a claim under this Act," or (B) "bringing a civil action under chapter 171 of title 28, United States Code (commonly known as the 'Federal Tort Claims Act')."

And, finally, whether or not the 28 U.S.C. § 1346 is technically part of the FTCA is academic: Its *text* has been regarded as "a clear and sweeping" waiver of immunity from suit on all claims" under the law of the state where the incident occurred, subject only to "well defined exceptions." *Yellow Cab*, 340 U.S. at 548 & n. 5. And that "sweeping

language," *id.*, not whether it is technically part of the FTCA, is all that matters here.

FEMA next contends that Plaintiffs are using the HPFAA's reference to 28 U.S.C. § 1346 "to bootstrap much broader sections of the FTCA[,] including its private person analog in 28 U.S.C. § 2674." (RB 18.)

But again, Plaintiffs were following FEMA's lead when they referenced 28 U.S.C. § 2674: The same FEMA memo that regarded 28 U.S.C. § 1346 as part of the FTCA ("FEMA Legal Analysis of Noneconomic Damages"), also states: "The FTCA directs the Office to apply substantive New Mexico law," then adds a footnote that not only cites "28 U.S.C. § 2674," but block quotes the entire statute. (AR 2652, n.1.)

And again, 28 U.S.C. § 2674 is academic here: The HPFAA expressly references 28 U.S.C. § 1346, and it mirrors the text of 28 U.S.C. § 2674, insofar as both provide that the United States is liable for tort damages *to the same extent as a private person under the law where the tort occurred*. *Compare* 28 U.S.C. § 1346 (making the United States liable for "money damages" for torts "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"), *with id.*, § 2674 ("The United States shall be liable, respecting the provisions of this title

relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances …").

In sum, neither of FEMA's arguments disturb the premise that, by cross-referencing 28 U.S.C. § 1346, sections 102(b)(1) and 103(5) of the HPFAA waives the Government's sovereign immunity for any damages a private person would be liable to pay under New Mexico law (subject only to sections 104(c)(3) and (d)(4)).

**Second**, even though FEMA concedes it is "generally true" the word "include" introduces a *nonexhaustive* list, it denies that section 104(d)(4) was intended to *expand* the waiver of sovereign immunity to include otherwise uncompensated damages under New Mexico law. (RB 21.)

Here, FEMA first contends the word "may" before "include" changes "include" from a nonexhaustive to an exhaustive. (RB 21.)

But the Supreme Court disagrees. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) ("the expansive phrasing of 'may include' points directly away from the sort of exclusive specification he claims").

So does the dictionary: It defines "may" as *permissive May*, Black's Law Dictionary (8th ed. 2004) ("To be permitted …."), consistent with Plaintiffs' construction of

11

"include" as nonexhaustive. And a nonexhaustive ("include") plus a permissive ("may") does not equal an exhaustive limit.

FEMA next contends the word "allowable" in the section title ("Allowable Damages") changes "may include" from nonexhaustive to exhaustive. (RB 21.) But again, the dictionary defines "allow" as *permissive*. *Allow*, Webster's Third New International Dictionary (2002)  ("To permit by way of concession"). And a nonexhaustive ("include") plus two permissive words ("allow" and "may") does not equal an exhaustive limit.

FEMA next contends Plaintiffs' interpretation of section 104(d)(4) would render it superfluous. (RB 2, 16, 21.)

But FEMA's brief showed otherwise when it noted that section 104(d)(4) includes damages that "'would not generally otherwise be available in litigation under New Mexico law.'" (RB 20, quoting 88 Fed. Reg. 59,757; *see also* RB 20 ("certain damages available under the Act would not be available under New Mexico law").

It is immaterial that, in addition to making "certain damages available under the Act [that] would not be available under New Mexico law," section 104(d)(4) may also include line items that may "already be available under New Mexico law." (RB 21.)

Erring on the side of redundancy is precisely how Congress would draft a provision designed to ensure particular damages are available whether or not they are otherwise compensable under state law. Otherwise, Congress would have to carefully study state appellate decisions when drafting relief statutes to discern what damages it must include in an expansion provision. The less burdensome approach is for Congress to simply list anything it wants to ensure is in the sovereign immunity waiver that might not be otherwise covered by the general rule.

Finally, FEMA contends that because "section 104(d)(4)" is a more "specific" provision, it controls "*if there is any conflict* between [it and] the Act's general provisions." (RB 17 (emphasis added).)

But there is no conflict: Sections 102(b)(1) and 103(5) generally waive sovereign immunity for any damages available under New Mexico law (subject to section 104(c)(3)). Section 104(d)(4) expressly expands that waiver by adding specific items of "otherwise uncompensable damages" under New Mexico law.

And even if there were a "conflict" between sections 102(b)(1) and 103(5), and section 104(d)(4), Plaintiffs have the specific provision (section 104(d)(4)) "prevailing" over the general ones (sections 102(b)(1) and 103(5)): Plaintiffs' very thesis is that section 104(d)(4) changes what might be

13

otherwise available under sections 102(b)(1) and 103(5), by expanding the scope of recoverable damages beyond that which would be ordinarily allowed under New Mexico law.

In sum, contrary to FEMA's contentions, Plaintiffs' interpretation of section 104(d)(4) is faithful to the HPFAA's text, and gives meaning to all its provisions.

## 1.2. FEMA's contrary reading is hypocritical, atextual, and renders provisions superfluous.

The foregoing showed that Plaintiffs' interpretation of HPFAA is faithful to the HPFAA's text, and gives meaning to all its provisions. The same cannot be said for FEMA's interpretation: FEMA contends the HPFAA "limits available damages" to only the "specific categories of pecuniary harm" listed in section 104(d)(4). (RB 15; *see also* RB 1, 12, 16.) But as discussed below, FEMA's interpretation is hypocritical, atextual and renders provisions of the HPFAA superfluous.

**First**, FEMA's interpretation is hypocritical.

As Plaintiffs pointed out in their opening brief, FEMA read the Cerro-Grande Fire Assistance Act ("CGFAA")—a relief act identical to the HPFAA—exactly how Plaintiffs read the HPFAA: It concluded the items of "uncompensated damages" in the CGFAA's analog to section 104(d)(4) as damages available "[*i*]*n addition*" to those available "under the laws of the State of New Mexico." 44 C.F.R. § 295.21(a).

14

FEMA's respondent's brief had no good answer for that argument. (RB 22.) Indeed, if anything, FEMA's brief made things worse. This occurred when, on page 22 of its brief, FEMA cited page 7492 of the administrative record for the premise "that damages for pain and suffering [*we*]re *not available*" under the CGFAA.

But the portion of the administrative record to which FEMA cited shows the exact opposite; it shows pain and suffering *was available*. Indeed, because "New Mexico law provides that a claimant may only be eligible for compensation for pain and suffering if he/she suffered a physical injury," FEMA stated "the CGFAA will not provide compensation for pain and suffering *unless a medical doctor can document that the pain and suffering was caused by physical injury as a result of the Cerro Grande fire*." (AR 7492 (emphasis added).)

> **Pain and Suffering**
> Generally, damages under the CGFAA are determined under New Mexico law, and New Mexico law provides that a claimant may only be eligible for compensation for pain and suffering if he/she suffered a physical injury due to the fire.   Therefore, the CGFAA will not provide compensation for pain and suffering unless a medical doctor can document that the pain and suffering was caused by the physical injury suffered as a result of the Cerro Grande fire.   The doctor must verify that any treatment for the physical injury was required as a result of the fire.

(AR 7492.)

In other words, FEMA was willing to pay pain and suffering under the CGFAA—a classic form of noneconomic damages, *see Morga v. Fedex Ground Package Sys., Inc.*, 420

15

P.3d 586, 596 (N.M. Ct. App. 2018)—provided the claimant
could substantiate the claim. This, of course, is impossible to
square with—and should thus be fatal to—FEMA's claim the
identical language in the HPFAA "excludes non-economic
damages." (RB 16.)

Ultimately, all FEMA can say about the CGFAA is that
it did not pay any noneconomic damages under that Act. (RB
22.)

But FEMA has not substantiated that fact, and after
its respondent's brief, there is reason to distrust FEMA.

Moreover, even if FEMA substantiated that it did not
pay noneconomic damages under the CGFAA, FEMA's brief
suggests it was because noneconomic damages were never
sought. (*See* RB 22 (noting "no comments regarding non-
economic damages are apparent from the rulemaking" under
the CGFAA (citing Disaster Assistance; Cerro Grande Fire
Assistance, 66 Fed. Reg. 15948 (Mar. 21, 2001))).

The specter that noneconomic damages were never
sought by CGFAA claimants is strengthened by the
conspicuous omission of noneconomic damages from FEMA's
list of items that "do[] not constitute compensatory damages"
and thus "are not recoverable from FEMA." *See* 44 C.F.R. §
295.21(b) (excluding (1) "[p]unitive damages," (2) "statutory
damages," (3) "interest on claims," (4) "attorney's fees and
agents' fees incurred in prosecuting a claim under the

16

CGFAA or an insurance policy," (5) "adjusting costs incurred by an insurer or other third party with the rights of a subrogee," (6) "taxes that may be owed by a Claimant as a consequence of receiving an award," and (7) "[t]he cost to a Claimant of prosecuting a claim under the CGFAA"). If those noneconomic damages were sought and refused, one would expect them to appear in the list of exclusions under the CGFAA's enabling rules. Thus, the absence of any reference to noneconomic damages shows either that FEMA thought them proper, or that they were never sought in the first place.

**Second**, FEMA's interpretation of section 104(d)(4) is atextual.

As discussed above, "may include" in section  connotes a permissive, nonexhaustive list that is inconsistent with FEMA's construction of section 104(d)(4) as an exhaustive limit. *Echazabal*, 536 U.S. at 80 ("the expansive phrasing of 'may include' points directly away from the sort of exclusive specification he claims").

Indeed, if Congress intended section 104(d)(4) to limit the scope of compensation (rather than expand it), it would have used the phrase "is limited to" not "may include" when introducing the list of damages in that section. Thus, FEMA's reading would require this Court to violate the separation of powers by ignoring the words Congress used in

favor of those FEMA wished it had. *62 Cases, More or Less, Each Containing Six Jars of Jam v. United State*s, 340 U.S. 593, 596 (1951).

**Third**, FEMA's interpretation would render significant provisions of the HPFAA superfluous.

FEMA is right that Courts should reject statutory interpretations that render provisions superfluous. (RB 12, citing *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128–29 (2018)). But FEMA's interpretation of section 104(d)(4) does just that.

FEMA contends section 104(d)(4) "expressly limits available damages to specific categories of *pecuniary harm*." (RB 15.) But if true, this would render superfluous sections 102(b)(1), 103(5), and 104(c)(3).

FEMA's reading of section 104(b)(4) would certainly render sections 102(b)(1) and 103(5) superfluous: After all, why would Congress, under sections 102(b)(1) and 103(5), invoke 28 U.S.C. § 1346—a "sweeping waiver of immunity from suit on all claims" under the law of New Mexico, *Yellow Cab*, 340 U.S. at 548 & n. 5, only to limit compensation under the Act to a specific list of enumerated damages regardless of whether they are available under New Mexico law? Thus, if limiting damages to section 104(d)(4) was

Congress's goal, there is no need for sections 102(b)(1) and 103(5).

FEMA's reading of section 104(b)(4) would also render section 104(c)(3) superfluous.

After all, if it is so obvious from the text of section 104(b)(4) that it is limited to "specific categories of pecuniary harm" as FEMA contends (RB 15), then the caveats in section 104(c)(3)(A)–(B) that payments under the Act are limited to "actual compensatory damages," and exclude interest and punitive damages, would be redundant surplusage.

In sum, FEMA's construction of the HPFAA is not only hypocritical (insofar as it contradicts its own past interpretation of identical language in the CGFAA), but also guilty of everything FEMA wrongly attributes to Plaintiffs' reading of the Act: it contradicts the statutory text and renders provisions superfluous. Accordingly, this Court should reject it.

## 1.3.   FEMA's reading is not entitled to any deference.

As Plaintiffs pointed out in their opening brief, this Court exercises independent review here. (AOB 15.)

After all, the sole dispute involves statutory interpretation. (RB 9 ["The question presented by this action is whether the Rule's exclusion of noneconomic damages is

contrary to the [HPFAA].".) Statutory interpretation is a question of law. *W. Air Lines, Inc. v. Bd. of Equalization of State of S.D.*, 480 U.S. 123, 129 (1987). And courts independently review questions of law. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024) ("[C]ourts decide legal questions by applying their own judgment").

Initially, FEMA seemed to agree. (RB 10 (noting that the "'deferential' standard" courts sometimes apply to agency action are "'do not apply to questions of law'" (quoting *FCC v. Prometheus Radio Project*, 141 S.Ct. 1150, 1158 (2021)).

But perhaps recognizing the weakness of its interpretation of the HPFAA, FEMA makes two bids for a more deferential standard of review; both fail.

**First**, FEMA contends this Court's review of FEMA's implementing regulations must be "narrow and deferential" even though this case presents a pure question of law. Resp. Br. at 7.

In so arguing, FEMA ignores *Loper Bright*, which expressly overruled the deferential standard of review set forth in *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), regarding agency interpretations of ambiguous statutes. *Loper Bright*, 144 S. Ct. at 2261.

*Loper Bright* specifically held that "[c]ourts need not and under the APA may not defer to an agency

interpretation of the law" regardless of any ambiguity in the statute's text. 144 S. Ct. at 2273 (emphasis added); *see also id.* at 2266 ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."). In the wake of *Loper Bright*, the Tenth Circuit has held that a federal agency's interpretation of a statute is entitled to "no deference." *Sunnyside Coal Co. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 112 F.4th 902, 910 (10th Cir. 2024).

That standard applies here, because this case alleges that FEMA's interpretation of the Act is contrary to law. As a result, FEMA's interpretation of the Act is entitled to no deference, regardless of whether this Court perceives any ambiguity in the Act's text. *See Sunnyside Coal Co.*, 112 F.4th at 910.

**Second**, because plaintiffs urging a waiver of sovereign immunity must generally show "that Congress unmistakenly intended to waive the Government's sovereign immunity" (RB 17), FEMA contends it can defeat Plaintiffs merely by presenting "a plausible reading of the Act that does not provide non-economic damages" (RB 2).

But this is FEMA's agency-deference argument in different dress and it should fail for the same reason: *Loper Bright*.

Moreover, as discussed above, FEMA's interpretation of the HPFAA is not remotely reasonable: It contradicts FEMA's own past interpretation of identical statutory language, it is atextual, and it renders significant provisions of the HPFAA superfluous. Thus, even if a reasonable interpretation were sufficient for FEMA to defeat Plaintiffs, it does not have one here.

Finally, in so arguing, FEMA fundamentally misconstrues the parties' burdens. As discussed above, the HPFAA contains a "clear and sweeping waiver of sovereign immunity" for all damages available under New Mexico law, save for the well-defined exceptions in section 104(c)(3). *Yellow Cab*, 340 U.S. at 548 & n.5. And "'[w]here a statute contains a clear and sweeping waiver of immunity ... with certain well defined exceptions," then "resort to that rule (of strict construction) cannot be had in order to enlarge the exceptions.'" *Id.* (quoting *Employers' Fire Ins. Co. v. United States*, 167 F.2d 655, 657 (9th Cir. 1948)).

Thus, because sections 102 and 103 expressed "a clear and sweeping" waiver of sovereign immunity when they invoked 28 U.S.C. § 1346, the presumptions surrounding sovereign immunity flip: The HPFAA's waiver of sovereign immunity "is liberally construed," and exceptions are narrowly construed. *Yellow Cab*, 340 U.S. at 554–55 (quoting *United States v. Shaw*, 309 U.S. 495, 501 (1940)).

Accordingly, it does not suffice for FEMA to present a "plausible" interpretation of the HPFAA; it had to present the best interpretation. It failed to do so.

## 2. There is nothing for this Court to "remand" regarding Plaintiffs' entitlement to noneconomic damages for annoyance and discomfort.

Sensing this Court will likely construe the HPFAA to permit noneconomic damages, FEMA asks this Court to "remand" back to FEMA for it "to assess claimants' eligibility for non-economic damages, the priority and amount of such damages, and the standard of proof for such damages." (RB 20, n.4, 23–24.)

But there is nothing to remand: This was an original proceeding under the Administrative Procedures Act to set aside an unlawful rule. The rule is unlawful and should be set aside; no further rulemaking action is required.

To the extent FEMA has any determinations left to make, they are limited to the determinations under the HPFAA that it must make in the ordinary course of assessing every claim. Pub. L. No. 117-180, § 104(d)(1)(B)(i)–(iv), 136 Stat. at 2171.

Accordingly, this Court should reject FEMA's request for a "remand."

## CONCLUSION

It is undisputed that New Mexico law permits noneconomic damages for annoyance and discomfort for property loss.

The foregoing established that, except for interest and punitive damages, the HPFAA requires FEMA to compensate claimants to the full extent of New Mexico law.

Accordingly, FEMA's final rule—which categorically refuses to compensate claimants for noneconomic damages—is contrary to law and should be set aside.

Dated: 10/11/24       Respectfully submitted:

SINGLETON SCHREIBER, LLP

*/s/ Benjamin I. Siminou*
Gerald B. Singleton
Benjamin I. Siminou
Jonna D. Lothyan
Alicia Zimmerman
Krystle D. Berkstresser
SINGLETON SCHREIBER LLP
591 Camino de la Reina, Ste 1025
San Diego, CA 92108
(619) 704-3288

*gsingleton@singletonschreiber.com*
*bsiminou@singletonschreiber.com*
*jlothyan@singletonschreiber.com*
*azimmerman@singletonschreiber.com*
*kberkstresser@singletonschreiber.com*

Brian S. Colón
Jacob Payne
SINGLETON SCHREIBER LLP
6501 Americas Pkwy. NE, Ste. 670
Albuquerque, NM 87110
(505) 587-3473
*bcolon@singletonschreiber.com*
*jpayne@singletonschreiber.com*

Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

I am the attorney for Plaintiffs TOBIN DOLAN, ET AL. This brief contains 4,695 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

SINGLETON SCHREIBER, LLP

*/s/ Benjamin I. Siminou*
Benjamin I. Siminou

26

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to each of the parties of record.

SINGLETON SCHREIBER, LLP

*/s/ Benjamin I. Siminou*
Benjamin I. Siminou