UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

TOBIN DOLAN, ET AL.,

      *Plaintiffs*,

  v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY; ET AL.,

      *Defendants.*

No. 23-cv-00908-JB-JFR

**PLAINTIFFS' RESPONSE TO MOTION TO
ALTER OR AMEND JUDGMENT**

TABLE OF CONTENTS

Table of Authorities...............................................................iii

Introduction..........................................................................1

Argument..............................................................................4

1.    This Court correctly held that the Hermit's
      Peak/Calf Canyon Fire may constitute a
      nuisance or trespass under New Mexico law. ...............4

2.    This Court correctly held that the HPFAA
      requires FEMA to compensate claimants for
      noneconomic damages available under New
      Mexico law. ..................................................................12

      2.1.    This Court's reading of the HPFAA is
              consistent with its text and gives
              meaning to all its provisions...............................12

      2.2.    FEMA's reading of the HPFAA is
              atextual and renders provisions
              superfluous.........................................................15

3.    This Court correctly directed FEMA to change
      its policy prohibiting compensation for
      noneconomic losses, and to award such
      damages where proper. ...............................................19

Conclusion ..........................................................................21

Certificate of Service ..........................................................23

TABLE OF AUTHORITIES

# Cases

*Barham v. S. Cal. Edison Co.*,
   88 Cal.Rptr.2d 424 (Cal. Ct. App. 1999) ..................... 5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................... 20

*Chevron U.S.A. Inc. v. Echazabal*,
   536 U.S. 73 (2002) ..................................................... 16

*Elton v. Anheuser-Busch Beverage Grp., Inc.*,
   58 Cal.Rptr.2d 303 (Cal. Ct. App. 1996) ................5, 11

*Exports, Inc. v. Black Hills Power, Inc.*,
   2008 WL 11505971 (D.S.D. Jan. 29, 2008) ................. 4

*Georgia Weller v. Blake*,
   726 S.E.2d 698 (Ga. Super. Ct. 2012) ........................ 4

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ............................................... 16

*Hensley v. San Diego Gas & Elec. Co.*,
   213 Cal.Rptr.3d 803 (Cal. Ct. App. 2017) ................... 4

*Martin v. Middle Rio Grande Conservancy Dist.*,
   194 P.3d 766 (N.M. Ct. App. 2008) ............................. 6

*Moon v. N. Idaho Farmers Ass'n*,
   2002 WL 32102995 (Idaho Dist. Ct. Nov. 19, 2002) .... 5

*Morga v. FedEx Ground Package Sys., Inc.*,
   420 P.3d 586 (N.M. Ct. App. 2018) ........................... 14

*Morga v. FedEx Ground Package System, Inc.,*
    512 P.3d 774 (N.M. 2022) .......................................... 21

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
    583 U.S. 109 (2018) ..................................................... 12

*Oregon Martin v. Union Pac. R. Co.,*
    474 P.2d 739 (Or. 1970) ................................................ 5

*POM Wonderful LLC v. Coca-Cola Co.,*
    573 U.S. 102 (2014) ..................................................... 12

*Ream v. Keen,*
    38 P.2d 1073 (Or. 1992) ................................................ 5

*Samantar v. Yousuf,*
    560 U.S. 305 (2010) ..................................................... 16

*United States v. New York Tel. Co.,*
    434 U.S. 159 (1977) ..................................................... 16

*United States v. Yellow Cab Co.,*
    340 U.S. 543 (1951) ..................................................... 10

*Wichita Ctr. for Graduate Med. Educ., Inc. v. United States,*
    917 F.3d 1221 (10th Cir. 2019) ................................... 16

*Wisconsin Heritage Farms, Inc. v. Markel Ins. Co.,*
    810 N.W.2d 465 (Wis. 2012) ........................................ 4

# Statutes

28 U.S.C.
§ 1346....................................................................9, 13

Colo. Rev. Stat. Ann.
§ 24-33.5-1217.7................................................... 5

N.M. Stat.
§ 68.3................................................................ 6, 7
§ 68.4.................................................................. 7
§ 2168.................................................................. 1

OR Rev. Stat.
§ 477.064............................................................. 5

Utah Code Ann.
§ 65A-8-201 ......................................................... 5

# Regulations

44 C.F.R.
§ 295.21............................................................. 14
§ 296................................................................. 19

# Other Authorities

88 Fed. Reg. 59732, 50743 ................................. 20

88 Fed. Reg. 59,757 .............................................14, 17, 18

## INTRODUCTION

This action concerns the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA"), a federal relief statute designed to compensate victims of the Hermit's Peak/Calf Canyon Fire. *See* Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. 2168, 2169.

That wildfire resulted when prescribed burns by the U.S. Department of Forestry escaped their predetermined areas, and turned into a wildfire that caused catastrophic property damage across five counties in New Mexico. Pub. L. No. 117-180, § 101(a)(1)–(2), (5), 136 Stat. at 2168.

Petitioners are some of the many New Mexico residents who suffered *economic harm* from homes lost to the fires, and *noneconomic harm* from being rendered homeless for an extensive period.

While FEMA agreed to compensate HPFAA claimants for economic losses, it categorically refused to compensate claimants for their noneconomic losses.

But as Petitioners explained, that violated the HPFAA, which—by incorporating the FCTA's definition of "injury" and New Mexico law on damages—requires FEMA to compensate claimants for noneconomic damages available for property loss in New Mexico.

1

This Court agreed with Petitioners, and entered a declaratory judgment in their favor. That judgment directed FEMA to change its policy categorically prohibiting noneconomic damages for property losses under the HPFAA, and compensate claimants for those injuries in accordance with the HPFAA.

FEMA now seeks relief from that judgment on three grounds; none persuade.

*First*, FEMA contends this Court incorrectly held that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass under New Mexico law. But that conclusion was consistent with the common law and New Mexico law. Moreover, because the HPFAA concedes (or at least presupposes) the Government's negligence, it does not require factual findings. Finally, a rule that imposes liability for negligent prescribed burns would promote, rather than hinder, fire prevention.

*Second*, FEMA contends this Court incorrectly construed the HPFAA to require FEMA to compensate claimants to the same extent as a private, negligent person would be liable to claimants under New Mexico law. But that construction of the HPFAA is most faithful to its text and gives meaning to all its provisions. By contrast, FEMA's strained reading of the HPFAA is atextual and renders several provisions superfluous. Nor would FEMA's reading

2

offer administrability advantages because, again, the HPFAA concedes, or at least presupposes, the Government's negligence.

*Third*, FEMA urges this Court to alter several provisions of its judgment to account for FEMA's concerns with its directives. But FEMA's concerns have no merit. The mere fact FEMA's final rule does not mention noneconomic damages does not dampen the need for relief from FEMA's stated policy not to award those damages, a promise it kept when administering claims. And instructing FEMA to compensate claimants for noneconomic losses does not impose any additional burdens beyond what FEMA is already doing to compensate claimants for economic losses.

Accordingly, this Court should deny FEMA's motion to alter or amend the judgment.

ARGUMENT

1. **This Court correctly held that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass under New Mexico law.**

Cognizant that noneconomic damages are available for property losses in New Mexico on nuisance or trespass claims, Petitioners emphasized the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass under New Mexico law. This Court agreed. (Mem. Op. at 55–58, 67–68.) FEMA contends that was error. (Mot. at 5–12.) Its arguments all fail.

[1] FEMA first contends there is no authority for the premise that "fires, let alone prescribed burns," constitute a nuisance or trespass. (Mot. at 7.)

But the common law treats fire as a nuisance and trespass. *E.g.*, *Hensley v. San Diego Gas & Elec. Co.*, 213 Cal.Rptr.3d 803 (Cal. Ct. App. 2017) (holding wildfire constituted nuisance and trespass); *Wisconsin Heritage Farms, Inc. v. Markel Ins. Co.*, 810 N.W.2d 465 (Wis. 2012) (affirming jury verdict finding wildfire constituted trespass and nuisance); *Exports, Inc. v. Black Hills Power, Inc.*, No. CV 07-5017-AWB, 2008 WL 11505971, at *6 (D.S.D. Jan. 29, 2008) (finding utility fire could constitute a nuisance); *Georgia Weller v. Blake*, 726 S.E.2d 698 (Ga. Super. Ct. 2012) (holding jury could find smoke from neighbor's firepit

4

amounts to nuisance); *Moon v. N. Idaho Farmers Ass'n*, No. CV 2002 3890, 2002 WL 32102995, at *20 (Idaho Dist. Ct. Nov. 19, 2002) (finding smoke from fires could constitute a nuisance or trespass); *Barham v. S. Cal. Edison Co.*, 88 Cal.Rptr.2d 424 (Cal. Ct. App. 1999) (holding wildfire constituted nuisance and trespass); *Ream v. Keen*, 38 P.2d 1073 (Or. 1992) (smoke from fire burning on adjacent land constituted trespass on plaintiff's land); *Oregon Martin v. Union Pac. R. Co.*, 474 P.2d 739 (Or. 1970) (spread of fire from defendants' land onto plaintiffs' land constituted a trespass).

Indeed, many states have *statutes* that treat fire as a nuisance or trespass. *See* Colo. Rev. Stat. Ann. § 24-33.5-1217.7(3) (providing that uncontrolled fires pose a hazard to life and property, and thus constitute a public nuisance); Utah Code Ann. § 65A-8-201 (same); Or. Rev. Stat. § 477.064 (same).

And to be sure, the common-law rule that fires may constitute a nuisance or trespass includes prescribed burns. *See, e.g.*, *Elton v. Anheuser-Busch Beverage Grp., Inc.*, 58 Cal.Rptr.2d 303, 304 (Cal. Ct. App. 1996) (holding that a negligent prescribed burn on defendant's property that escaped and caused damage to real property constitutes a trespass).

5

Thus, contrary to FEMA's claim, this Court's conclusion that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass is consistent with the common law.

**[2]** FEMA next contends this Court's conclusion that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass is contrary to New Mexico law. (Mot. at 9.)

Here, FEMA cites New Mexico Statutes section 68-5-3, which states: "Prescribed burning is considered in the public interest and not a public or private nuisance." N.M. Stat. § 68-5-3(A).

But statutes which "limit the common law right of tort victims to seek compensation from tortfeasors" like section 68-5-3 must be "narrowly construed." *Martin v. Middle Rio Grande Conservancy Dist.*, 194 P.3d 766, 770 (N.M. Ct. App. 2008).

Here, the narrow, sensible construction of section 68-5-3 is that, to enable their use in fire prevention, it immunizes only the inherent downsides of even the most careful prescribed burns (smoke and ash on adjacent property), *not* a poorly handled or ill-advised prescribed burn that causes a wildfire that decimates property across five counties.

The text of section 68-5-3 supports that reading: Indeed, while FEMA quotes subsection A, it ignores subsection B, which requires "that the prescribed is conducted with appropriate precautionary measures," including sufficient "personnel" and "equipment," and "the use of appropriate prescribed burn techniques that cause the fire to be confined to a predetermined area." *Id.*, § 68-5-3(B). And subsection (C) prohibits prescribed burns under conditions that increase the odds a prescribed burn that is *not* be confined to a predetermined area. *Id.*, § 68-5-3(B)–(C) (prohibiting prescribed burns "when the state forester or a county or municipality issues restrictions prohibiting a prescribed burn because of drought or wind conditions," or "when the national weather service has issued a red flag warning for the area where the prescribed burn is planned to take place").

The very next section *after* section 68-5-3 (68-5-4) further confirms' this reading of section 68-5-3: It states that a landowner is "liable for any damages to property or for personal injury caused by the prescribed burn, … if that person was negligent in starting, controlling or extinguishing the prescribed burn." N.M. Stat. § 68-5-4(A).

In sum, the best reading of New Mexico law is that, at most, it immunizes the unavoidable consequences of even careful prescribed burns (smoke and ash on adjacent

7

properties), but *not* where the party conducting the burn negligently fails to ensure "the fire [will] be confined to a predetermined area." N.M. Stat. § 68-5-3(B).

Thus, contrary to FEMA's claim, this Court's conclusion the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass is consistent with New Mexico law.

**[3]** FEMA next contends this Court's conclusion that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass is a factual question not litigated in this proceeding or supported by record evidence. (Mot. 7–9.)

Here, FEMA contends only a *negligent* prescribed burn may constitute a nuisance or trespass in New Mexico, and "there is no record evidence … the Forest Service was negligent." (Mot. at 11.)

But no such factual findings are required. This is because the HPFAA is a relief statute that *takes for granted* the federal government caused property loss through negligent conduct. Congress's intent to concede negligence and jump to assessing the validity and amount of claims submitted under the HPFAA is clear from its text.

First, the HPFAA all but concedes the Government was negligent: Whereas New Mexico law prohibited prescribed burns during high winds or drought conditions,

N.M. Stat. § 68-5-3(B)–(C), the HPFAA states the Government attempted the prescribed burn that caused the Hermit's Peak/Calf Canyon Fire "when erratic winds were prevalent throughout the area that was also suffering from severe drought." Pub. L. No. 117-180, § 102(a)(1), 136 Stat. at 2168.

Second, the HPFAA reflects a clear intent to accept fault, and jump to a determination of the validity and amount of each claim: The HPFAA states that "the U.S. Forest Service has assumed responsibility for the Hermit's Peak/Calf Canyon Fire," and that "the United States should compensate the victims of the Hermit's Peak/Calf Canyon Fire." Pub. L. No. 117-180, § 102(a)(1), 136 Stat. at 2168–69. And the HPFAA lists just two purposes: "(1) compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire," and "(2) to provide for the expeditious consideration and settlement of claims for those injuries." Finally, the HPFAA defines "injury" for purposes of compensation as "loss of property …caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. 1346(b)(1), *quoted in* Pub. L. No. 117-180, § 102(a)(1), 136 Stat. at 2169.

In that respect, the HPFAA is simply one of "hundreds of private relief acts" by which "Congress for many years has

recognized the Government's obligation to pay claims on account of damage to or loss of property or on account of personal injury or death caused by negligent or wrongful acts of employees of the Government." *United States v. Yellow Cab Co.*, 340 U.S. 543, 548–549 (1951). The only difference with the HPFAA is that "[t]his Act merely substitutes [FEMA] for Congress as the agency to determine the validity and amount of the claims." *Id.* at 549.

In short, in order to expedite the settlement of claims for injuries caused by the Hermit's Peak/Calf Canyon Fire, the HPFAA *presupposes* that fire was caused by negligent conduct of a Government employee. Thus, neither this Court (nor FEMA) needs to make any factual findings regarding whether the prescribed burn was negligently planned and/or handled for FEMA to compensate claimants with property damage for noneconomic damages available for property damage under New Mexico law.

Were this not the case, one wonders why FEMA is compensating claimants at all? Indeed, it is not clear why the Government would be liable to claimants for *any* compensatory damages (economic or noneconomic) absent negligence or other wrongful conduct. And yet if FEMA is compensating claimants for economic losses without first requiring claimants to prove negligence or other wrongful conduct by the Government, it is because FEMA

10

understands the HPFAA has (correctly) taken the Government's fault and liability for granted. There is no reason to take a different tack and require claimants to establish fault in order to obtain the other half of their actual, compensatory damages.

[4] Finally, FEMA contends this Court's conclusion that the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass will deter efforts to prevent wildfires.

But this Court's ruling did little more than what the common law and New Mexico statutes have done for years: Recognize that nuisance or trespass liability may be imposed for prescribed burns that are ill advised and poorly handled. N.M. Stat. § 68-5-3(B)–(C); *id.*, § 68-5-4(A)–(B); *see also Elton*, 58 Cal.Rptr.2d at 304. And there is no evidence that rule unduly restricts prescribed burns as a tool in fire prevention.

On the contrary, such a rule promotes public safety by encouraging those who conduct prescribed burns to take "appropriate precautionary measures" to ensure "the fire [will] be confined to a predetermined area." N.M. Stat. § 68-5-3(B).

11

2.    **This Court correctly held that the HPFAA requires FEMA to compensate claimants for noneconomic damages available under New Mexico law.**

Cognizant the Hermit's Peak/Calf Canyon Fire may constitute a nuisance or trespass for which noneconomic damages are available under New Mexico law, Petitioners explained the HPFAA requires FEMA to compensate claimants consistent with New Mexico law. This Court agreed. (Mem. Op. at 50.) FEMA contends that was error. (Mot. at 12–17.) FEMA is wrong: Whereas Petitioners' reading of the HPFAA is consistent with its text and gives meaning to all its provisions, FEMA's reading of the HPFAA is hypocritical, atextual, and renders provisions superfluous.

2.1.    **This Court's reading of the HPFAA is consistent with its text and gives meaning to all its provisions.**

When presented with competing interpretations of a statute, courts must favor the one most faithful to its text and which gives meaning to all its provisions. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128–29 (2018); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014).

Here, the reading of the HPFAA most faithful to text and which gives meaning to all its provisions is [1] that sections 102(b)(1) and 103(5) require FEMA to compensate claimants for any damages available under New Mexico law

for negligent conduct by a private party, [2] *less* the items in section 104(c)(3), [3] *plus* the items in section 104(d)(4).

[1] Sections 102(b)(1) and 103(5) set the default rule for compensation under the HPFAA.

Section 102(b)(1) states the purpose the Act is "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for *injuries* resulting from the fire." Pub. L. No. 117-180, § 102(b)(1), 136 Stat. at 2169 (emphasis added).

Section 103(5) states that "injury" in section 102(b)(1) has "the same meaning as the term 'injury or loss of property, or personal injury or death' as used in section 1346(b)(1) of title 28, United States Code." Pub. L. No. 117-180, § 103(5), 136 Stat. at 2169.

And 28 U.S.C. § 1346(b)(1) in turn requires the Government to compensate claimants for "loss of property" to the same extent as "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" for a "negligent or wrongful act."

Read together, sections 102(b)(1) and 103(5) thus require FEMA to compensate claimants to the same extent as a private, negligent party would be liable to the claimants under New Mexico law.

13

**[2]** Section 104(c)(3) limits the compensation due under sections 102(b)(1) and 103(5).

Section 104(c)(3)(A) limits compensation under the HPFAA to "actual compensatory damages," a phrase that includes noneconomic damages. *E.g.*, *Morga v. FedEx Ground Package Sys., Inc.*, 420 P.3d 586, 596 (N.M. Ct. App. 2018) ("compensatory damages[ ] includ[es] any non-economic damages").

Section 104(c)(3)(B)(i)–(ii) excludes "interest before settlement or payment of a claim" and "punitive damages" from compensation under the HPFAA.

**[3]** Finally, section 104(d)(4) expands the scope of compensation under 102(b)(1) and 103(5).

Section 104(d)(4) does so by including categories of damages that would not be otherwise available under New Mexico law, a point FEMA conceded. *See* RB 20–21, citing 88 Fed. Reg. 59,757 (recognizing section 104(d)(4) includes items of damages that "would not generally otherwise be available under New Mexico law").

Not surprisingly, this is precisely how FEMA interpreted an identical provision in an identical act to the HPFAA in the past. *See* 44 C.F.R. § 295.21(a) (interpreting section 104(d)(4) of the Cerro Grande Fire Relief Act, a provision identical to section 104(d)(4) of the HPFAA, as

14

listing damages were available "[i]n addition" to the damages available "under the laws of the State of New Mexico").

*          *          *

In sum, Petitioner's reading of the HPFAA—in which sections 102(b)(1) and 103(5) require FEMA to compensate claimants for any damages available under New Mexico law for negligent conduct by a private party, *less* the items in section 104(c)(3), *plus* the items in section 104(d)(4)—is faithful to its text and gives meaning to all its provisions.

As discussed in the next section, FEMA's reading has none of these virtues.

## 2.2.  FEMA's reading of the HPFAA is atextual and renders provisions superfluous.

FEMA reads the HPFAA differently: In FEMA's view, compensation is strictly limited to the line items in section 104(d)(4), less section 104(c)(3). (Mot. at 13.) But that interpretation of the HPFAA is [1] atextual and [2] renders provisions superfluous.

**[1]** FEMA's interpretation is *atextual* because it reads section 104(d)(4) exactly contrary to the words Congress used.

15

FEMA construes section 104(d)(4) as setting an exhaustive limit on the scope of compensation under the HPFAA. (Mot. at 13.)

But the words Congress used in section 104(d)(4) ("may include") connote a *nonexhaustive* list. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196–97 (2021) (explaining that the factors listed in a federal statute are "not exhaustive" because they are introduced by the word "include"); *Samantar v. Yousuf*, 560 U.S. 305, 316–17, n.10 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."); *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) ("the expansive phrasing of 'may include' points directly away from the sort of exclusive specification he claims"); *United States v. New York Tel. Co.*, 434 U.S. 159, 169 (1977) (holding that when a statute introduces a list of factors with the word "include," courts are not bound by that list and may consider other factors not provided); *Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1224 (10th Cir. 2019) (holding that "include" means "that the enumerated entities are not exclusive"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 132–33 (2012) (explaining that "include does not ordinarily introduce an exhaustive list" but "introduces examples"); *Include*, Websters Third New

16

International Dictionary (2002) ("to ... list ... as part of a larger group, class, or aggregate"); *May*, Black's Law Dictionary (8th ed. 2004) ("To be permitted ....").

By contrast, in section 104(c)(3)—where Congress clearly intended to limit the scope of recovery available under the HPFAA—it used mandatory, restrictive language: "shall be limited to" and "shall not include." Pub. L. No. 117-180, § 104(c)(3)(A)–(B), 136 Stat. at 2170–71.

Congress's decision to use limiting language in section 104(c)(3), but nonexhaustive language in section 104(d)(4), confirms Congress intended the former—but not the latter—to limit the scope of compensation under the HPFAA.

**[2]** Not coincidentally, FEMA's atextual interpretation of the HPFAA would also render provisions superfluous.

*First*, FEMA's reading would render sections 102(b)(1) and 103(5) wholly superfluous. Why would Congress define the scope of recovery under the HPFAA to include any damages claimants would be entitled to receive from a private, negligent party under New Mexico law in sections 102(b)(1) and 103(5), only to then limit recovery under the HPFAA to damages that may or may not be available under New Mexico law in section 104(d)(4)? (*See* RB 20–21, citing 88 Fed. Reg. 59,757 (recognizing section 104(d)(4) includes items of damages that "would not generally otherwise be available under New Mexico law"). This would be akin to

17

inviting rectangles to a party, but admitting only squares and triangles at the door. Tellingly, after all this time, FEMA *still* has yet to square its reading of the HPFAA with sections 102(b)(1) and 103(5).

*Second*, FEMA's reading would render the reference to New Mexico law in section 104(d)(4) superfluous. Again, why would the HPFAA invoke New Mexico law on the calculation of damages if that provision awarded damages that may or may not be available under New Mexico law? *See* RB 20–21, *citing* 88 Fed. Reg. 59,757.

*Third*, FEMA's reading would render section 104(c)(3) superfluous. If the only items of compensation available under HPFAA are the forms of compensatory damages listed in section 104(d)(4), there would be no need to separately limit compensation to "actual compensatory damages," or to expressly exclude interest or punitive damages. Pub. L. No. 117-180, § 104(c)(3)(A)–(B), 136 Stat. at 2170–71.

*          *          *

In sum, whereas Petitioners' reading of the HPFAA is consistent with its text and gives meaning to all its provisions, FEMA's reading of the HPFAA is hypocritical, atextual, and renders provisions superfluous.

The only new argument FEMA offers in support of its strained reading of the HPFAA is that it would be "far more

18

administrable than the Court's reading" because the Court's reading would require FEMA to determine "whether a claimant has a valid tort claim." (Mot. at 14.)

But as explained above, that argument rests on the flawed premise that a claimant would need to show the Government was negligent in starting the Hermit's Peak/Calf Canyon Fire in order to receive compensation under the HPFAA. Instead, the HPFAA effectively concedes negligence for purposes of claims processing, and—subject to the limits in section 104(c)(3), and expansions in 104(d)(3)— requires FEMA to compensate claimants for property damage to the same extent as a private, negligent party would be liable to the claimants under New Mexico law. Pub. L. No. 117-180, §§ 102(b)(1), 103(5), 136 Stat. at 2169.

### 3. This Court correctly directed FEMA to change its policy prohibiting compensation for noneconomic losses, and to award such damages where proper.

Finally, FEMA asks this Court to correct the judgment to account for problems FEMA perceives with its directives. None of FEMA's concerns have merit.

**First**, FEMA contends that because its final rule (44 C.F.R. § 296) did not mention noneconomic damages, there is nothing to correct. (Mot. 17.)

But agency actions correctable under the
Administrative Procedures Act are not limited to what is in
the *Code of Federal Regulations*, but includes any agency
actions "by which rights or obligations have been
determined, or from which legal consequences will flow."
*Bennett v. Spear*, 520 U.S. 154, 178 (1997).

Here, FEMA's comments on the final rule in the
*Federal Register* expressly stated FEMA will not compensate
claimants for noneconomic damages under the HPFAA. 88
Fed. Reg. 59732, 50743. And the administrative record (and
FEMA's concession) have borne out that they have
categorically refused to compensate claimants for
noneconomic damages. The fact FEMA may have
strategically omitted that policy from the *Code of Federal
Regulations* does not diminish the need for a judicial
declaration that such a policy violates the HPFAA.

**Second**, FEMA professes confusion regarding how to
handle claims for noneconomic damages under this Court's
ruling.

But the answer is simple. Again, because the HPFAA
takes the Government's negligence for granted, and directs
FEMA to compensate claimants as if Government were a
private, negligent party in New Mexico, FEMA—as it has
done with every claim so far—does *not* need to determine

20

"whether each claimant would have a valid tort claim under New Mexico law." (Mot. at 18.)

Rather, as FEMA has presumably done thus far, FEMA merely needs to determine the amount of the claim. In that respect, FEMA need only do that which New Mexico juries are called upon to do every day: Undertake the "inherently difficult task" of attaching a monetary value to intangible injuries based on the facts of each individual case. *Morga v. FedEx Ground Package System, Inc.*, 512 P.3d 774, 783 (N.M. 2022).

## CONCLUSION

For the foregoing reasons, this Court should deny FEMA's motion to alter or amend the judgment.

Dated: 3/4/25                 Respectfully submitted:

                              SINGLETON SCHREIBER, LLP

                              */s/ Benjamin I. Siminou*
                              Gerald B. Singleton
                              Benjamin I. Siminou
                              Jonna D. Lothyan
                              Alicia Zimmerman
                              Krystle D. Berkstresser
                              SINGLETON SCHREIBER LLP
                              591 Camino de la Reina, Ste 1025
                              San Diego, CA 92108
                              (619) 704-3288

                              *gsingleton@singletonschreiber.com*
                              *bsiminou@singletonschreiber.com*
                              *jlothyan@singletonschreiber.com*
                              *azimmerman@singletonschreiber.com*
                              *kberkstresser@singletonschreiber.com*

                              Brian S. Colón
                              Jacob Payne
                              SINGLETON SCHREIBER LLP
                              6501 Americas Pkwy. NE, Ste. 670
                              Albuquerque, NM 87110
                              (505) 587-3473
                              *bcolon@singletonschreiber.com*
                              *jpayne@singletonschreiber.com*

                              Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to each of the parties of record.

SINGLETON SCHREIBER, LLP

*/s/ Benjamin I. Siminou*
Benjamin I. Siminou