IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOBIN DOLAN; LYDIA DOLAN; TANGEE
DOLAN; DOROTHY JONES; BRIAN
RODGERS; BARBARA RODGERS;
MICHAEL SALAZAR; REYNALDO
HERRERA; and KATHY VALERA,

        Plaintiffs,

vs.                                                        No. CIV 23-0908 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

        Defendant.

-- and --

MARIANNA LANDS and CHARLES
WILLIAM PAYNTER;

        Plaintiffs,

vs.                                                        No. CIV 23-0869 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DEANNE CRISWELL, as
Administrator of FEMA; and ANGELA
GLADWELL,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendants/Respondents' Motion to Stay

Judgments Pending Appeal, filed September 16, 2025 (Doc. 87)("Motion to Stay"). The Court

holds a hearing on December 18, 2025. <u>See</u> Clerk's Minutes at 1, filed December 18, 2025 (Doc.

118). The primary issues are: (i) whether the Court must automatically stay the Final Judgment,

filed December 31, 2024 (Doc. 61)("Final Judgment") pending appeal under rule 62(b) of the

Federal Rules of Civil Procedure, because the Final Judgment operates as a money judgment, given that it compels FEMA to award noneconomic damages for injuries resulting from the Hermit's Peak/Calf Canyon Fire; and (ii) whether the Court should exercise its discretion to stay the judgments under rule 62(d), because the discretionary stay factors favor Defendant Federal Emergency Management Agency ("FEMA"). The Court concludes that: (i) an automatic stay is unavailable, because the Final Judgment does not operate as money judgment, given that it does not require payment of any specific dollar amount to any individual claimant; and (ii) a discretionary stay is unwarranted, because the stay factors favor the Plaintiffs. Because the Final Judgment mandates compliance rather than compensation -- and because the equities do not justify delay -- a stay has no place here.

## **FACTUAL BACKGROUND**

In April 2022, a wildfire scorched over 340,000 acres of land in northeastern New Mexico, destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel and Taos Counties. See Patrick Lohmann, Were You Affected by the Massive Wildfire in Northern New Mexico? We Want to Hear From You, Were You Affected by the Massive Wildfire in Northern New Mexico? We Want to Hear From You (March 2, 2023), https://www.propublica.org/getinvolved/new-mexico-wildfires-hermits-peak-calf-canyon (last accessed December 30, 2025). It is the largest wildfire in New Mexico State history. See Bryan Pietsch and Jason Samenow, New Mexico blaze is now largest wildfire in state history, The Washington Post (May 17, 2022), https://www.washingtonpost.com/nation/2022/05/17/calf-canyon-hermits-peak-fire-new-mexico/ (last accessed December 30, 2025). The first wildfire began on April 6, 2022, in Hermit's Peak, New Mexico, when the United States Forest Service ("Forest Service") initiates a prescribed burn in the Santa Fe National Forest in San Miguel County

that quickly spreads beyond federal land and turns into a wildfire.  See Hermit's Peak Act § 102(a) Findings and Purposes, 136 Stat. 2144, 2168 ("Hermit's Peak Act § 102(a)").  A second wildfire begins on April 19, 2022, in Calf Canyon, New Mexico, when a dormant pile burn[1] from the prior winter re-emerges.  See Hermit's Peak Act § 102(a).  Within the same month, on April 27, 2022, the wildfires at Hermit's Peak and Calf Canyon merge, and form the Hermit's Peak/Calf Canyon Fire.  See Hermit's Peak Act § 102(a).  By May 2022, the Hermit's Peak/Calf Canyon Fire caused evacuations in multiple villages and communities, including San Miguel County jail, the State's psychiatric hospital, the United World College, and New Mexico Highlands University.  See Hermit's Peak Act § 102(a).  At the request of New Mexico Governor Michelle Lujan Grisham, President Joe Biden issues a major disaster declaration for the counties of Colfax, Mora, and San Miguel.  See Hermit's Peak Act § 102(a); Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. 33808 (August 29, 2023)(codified at 44 C.F.R. 296).  The Forest Service fully contains the Hermit's Peak/Calf Canyon Fire four months later, in August 2022.  See The New Mexican, Hermits Peak/Calf Canyon Fire 100 percent contained, fire officials say (August 21, 2022), https://www.santafenewmexican.com/news/local_news/hermits-peak-calf-canyon-fire-100-percent-contained-fire-officials-say/article_5ac054fc-21a1-11ed-9401-134e852ee0a8.html    (last visited December 30, 2025).  The Forest Service assumes responsibility for the Hermit's Peak/Calf Canyon Fire.  See Hermit's Peak Act § 102(a).

In September 2022, Congress establishes a dedicated relief fund to compensate victims of the Hermit's Peak/Calf Canyon Fire by enacting the Hermit's Peak Act.  See Hermit's Peak Act §

---

[1]A pile burn "is a type of prescribed fire where firefighters pile and burn forest debris to reduce an area's wildfire risk."    Pile Burning, United States Forest Service, https://www.fs.usda.gov/detail/arp/landmanagement/resourcemanagement/?cid=fsm91_058291 (last accessed December 30, 2025).

102(b), 136 Stat. at 2169 ("§ 102(b)").    The Hermit's Peak Act has two purposes: "(1) to compensate the victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and (2) to provide for the expeditious consideration and settlement of claims for those injuries." Hermit's Peak Act § 102(b).  The Hermit's Peak Act defines injury using the Federal Tort Claim Act's definition, which is "injury or loss of property or personal injury or death."  Hermit's Peak Act § 103(5), 136 Stat. at 2169 (citing FTCA 28 U.S.C. § 1346(b)(1)).  The Hermit's Peak Act also directs FEMA's Administrator to promulgate regulations for the processing and payment of claims.  See Hermit's Peak Act § 104(f)(1).

FEMA publishes its final regulations on August 29, 2023.  See 44 C.F.R. § 296 ("Hermit's Peak Regulations").  The Hermit's Peak Regulations state that the purpose of the Hermit's Peak Act is to "receive, evaluate, process, and pay actual compensatory damages for injuries resulting from the Hermit's Peak/Calf Canyon Fire."  44 C.F.R § 296.1.  To receive compensation, a claimant "must be an Injured Person who suffered injury as a result of the Hermit's Peak/Calf Canyon Fire and sustained damages."  44 C.F.R. § 296.20.  First, a claimant must file a Notice of Loss form with the FEMA Claims Office that briefly describes each injury.  See 44 C.F.R. § 296.5(b); id § 296.10(a).  Second, a Claims Reviewer reviews and evaluates the claim.  See 44 C.F.R. § 296.5(c).  Third, an Authorized Official[2] determines whether FEMA owes compensation to the claimant.  See 44 C.F.R. § 296.5(d).  Furthermore, acceptance of an award under the Hermit's Peak Act bars recovery under the Federal Tort Claims Act or a civil action against the United States regarding the same subject matter.  See 44 C.F.R. § 296.5(a).

---

[2] The Hermit's Peak Regulations define Authorized Official as "an employee of the United States who is delegated with authority by the Director of the Claims Office to render binding determinations on claims and to determine compensation due to claimants under the Act."  44 C.F.R. § 296.4.

The Court takes background information about the Plaintiffs from the Complaint for Declaratory Relief in <u>Lands v. FEMA</u>, No. CIV 23-0869 JB, filed October 3, 2023 (D.N.M.)(Doc. 1)("<u>Lands</u> Complaint")("<u>Lands</u>"), and from the Complaint for Declaratory & Injunctive Relief in <u>Dolan v. FEMA</u>, No. CIV 23-0908 JB, filed October 17, 2023 (D.N.M.)(Doc. 1)("<u>Dolan</u> Complaint")("<u>Dolan</u>").  The Plaintiffs in <u>Dolan</u> are Tobin Dolan, Lydia Dolan, Tangee Dolan, Dorothy Jones, Brian Rodgers, Barbara Rodgers, Michael Salazar, Linda Salazar, Reynaldo Herrera, and Kathy Valera ("<u>Dolan</u> Plaintiffs").  <u>See Dolan</u> Complaint at 5.  Before the Hermit's Peak/Calf Canyon Fire, Tobin Dolan and L. Dolan resided in a single-family home on their fourteen-acre land in Rociada, New Mexico, that they jointly owned with Tobin Dolan's mother, Tangee Dolan, and Tobin's grandmother, Dorothy Jones.  <u>Dolan</u> Complaint ¶ 9, at 5.  Tangee Dolan and Jones also resided in their own respective single-family homes on the fourteen-acre land.  <u>See Dolan</u> Complaint, ¶ 9, at 5.  The Dolans have owned the land for over twenty-five years. <u>See Dolan</u> Complaint ¶ 9, at 5.  After the Hermit's Peak/Calf Canyon Fire, all of the Dolans -- Tobin Dolan, L. Dolan, Tangee Dolan, and Dorothy Jones -- now share an apartment "while they wait to rebuild."  <u>Dolan</u> Complaint ¶ 9, at 5.  Similarly, Plaintiffs Brian Rodgers and Barbara Rodgers resided in a single-family home on a 241-acre property in Sapello, New Mexico, for twenty-five years.  <u>See Dolan</u> Complaint ¶ 10, at 6.  M. Salazar and L. Salazar lived in a single-family home on 105-acres in Rociada, <u>see Dolan</u> Complaint ¶ 11, at 6-7, and Herrera and Valera lived in a single-family home near Rociada, <u>see Dolan</u> Complaint ¶ 12, at 7.  After the Hermit's Peak/Calf Canyon Fire, the Rodgers now live in a travel-trailer while they wait to rebuild their home.  <u>Dolan</u> Complaint ¶ 10, at 6.  All of the <u>Dolan</u> Plaintiffs allege that, as a result of the Hermit's Peak/Calf Canyon Fire and its destruction of their homes, they have "suffered and

continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property." <u>Dolan</u> Complaint ¶¶ 9-10, at 5-6.

The Plaintiffs in <u>Lands</u> are Marianna Lands and Charles Paynter. <u>See</u> <u>Lands</u> Complaint ¶¶ 4-5, at 2. Before the Hermit's Peak/Calf Canyon Fire, Lands resided in Cleveland, New Mexico. <u>See</u> <u>Lands</u> Complaint ¶ 4, at 2. Paynter lived on Trout Springs Ranch in Gallinas Canyon, Montezuma, New Mexico. <u>See</u> <u>Lands</u> Complaint ¶ 5, at 2. Both Lands and Paynter lived within the Hermit's Peak/Calf Canyon Fire burn scar.[3] <u>See</u> <u>Lands</u> Complaint ¶¶ 4-5, at 2. The Hermit's Peak/Calf Canyon Fire and the resulting flooding caused Lands and Paynter to relocate. <u>See</u> <u>Lands</u> Complaint ¶¶ 4-5, at 2. Like the <u>Dolan</u> Plaintiffs, the <u>Lands</u> Plaintiffs allege that, as a result of the Hermit's Peak/Calf Canyon Fire and its subsequent flooding, they suffered noneconomic damages such as pain and suffering, annoyance, discomfort, and inconvenience. <u>See</u> <u>Lands</u> Complaint ¶¶ 4-5, at 2-3.

The Court hereinafter refers to the <u>Lands</u> Plaintiffs and <u>Dolan</u> Plaintiffs as "the Plaintiffs," and the alleged losses which include pain and suffering, annoyance, discomfort, and inconvenience as "noneconomic damages."

## **PROCEDURAL BACKGROUND**

On December 17, 2024, the Court files its Memorandum Opinion and Order (Doc. 60)("MOO")[4] holding, among other things, that the Plaintiffs may recover noneconomic damages for nuisance, trespass, and personal injury, such as emotional distress, discomfort, annoyance, and

---

[3]A wildfire burn scar is "a charred, barren, strip of land annihilated by the fire." Sean Breslin, <u>Wildfire Burn Scars: How Long Until They Heal?</u> The Weather Channel, https://weather.com/news/news/how-long-does-wildfires-burn-scar-need-heal-20130812 (Dec. 3, 2019)("<u>Wildfire Burn Scars</u>"). Because the burn scar is devoid of vegetation, rainfall can result in a high risk of flash floods. <u>Wildfire Burn Scars</u>.

[4] Parallel fillings were made in <u>Dolan</u> and <u>Lands</u>. This MOO cites to the filings in <u>Dolan</u>.

inconvenience.  See MOO at 1.  First, the Court holds that the Hermit's Peak/Calf Canyon Fire constitutes an invasion of the Plaintiffs' use and enjoyment of property, permitting recovery of noneconomic damages under New Mexico nuisance law.  See MOO at 55.  Second, the Court concludes that New Mexico trespass law likewise allows recovery of noneconomic damages.  See MOO at 65.  Third, the Court determines that the Plaintiffs may recover noneconomic damages for personal injury under New Mexico law.  See MOO at 71.  Fourth, and in the alternative, the Court holds that the Extent of Damages provision, § 104(c)(3), independently authorizes recovery of noneconomic damages.  See MOO at 73.  Those conclusions culminate in the Final Judgment. See Final Judgment at 1.  The Final Judgment states, in pertinent part: "In the MOO, the Court: (i) holds unlawful and sets aside the Federal Emergency Management Agency's Hermit's Peak/Calf Canyon Fire Assistance Regulation, 44 C.F.R. § 296.21; and (ii) compels FEMA to award noneconomic damages for injuries resulting for the Hermit's Peak/Calf Canyon Fire."  Final Judgment at 1.  Further, the "it is ordered" section reads:

> **IT IS ORDERED** that: (i) the Federal Emergency Management Agency's Hermit's Peak/Calf Canyon Fire Assistance Regulation, 44 C.F.R. § 296.21, is unlawful and is set aside; (ii) FEMA must award noneconomic damages for injuries resulting from the Hermit's Peak/Calf Canyon Fire; and (iii) Final Judgment is entered.

Final Judgment at 1.  In short, the Final Judgment invalidates FEMA's regulation excluding noneconomic damages and bars FEMA from categorically refusing to award them, see Final Judgment at 1, but it neither sets nor requires payment of any specific dollar amount to any individual claimant; instead, the Final Judgment requires FEMA to award noneconomic damages only to those who establish a valid noneconomic damages claim.

On September 16, 2025, FEMA files its Motion to Stay.  See Motion to Stay at 1.  FEMA asserts two separate grounds for staying the Final Judgment.  See Motion to Stay at 1-2.  First,

FEMA argues that the Court's Final Judgment is automatically stayed by FEMA's appeal, because it is a money judgment subject to an automatic stay. See Motion to Stay at 8-9. In the alternative, FEMA asks the Court to issue a discretionary stay of the Final Judgment. See Motion to Stay at 9. FEMA contends that the discretionary stay factors favor a stay because the appellate court is likely to reverse of vacate the Final Judgment, and the equitable factors support a stay. See Motion to Stay at 10-14.

On November 12, 2025, the Plaintiffs file their Opposition to FEMA's Motion to Stay the Judgment (Doc. 108)("Response"). The Plaintiffs first respond that the Final Judgment is not stayed automatically, because it is a rulemaking challenge and not a money judgment. See Response at 7. The Plaintiffs reason that the Final Judgment is not a money judgment, because the Final Judgment does not require "one party to pay a *specific* sum of money to another party." Response at 7 (emphasis in original). Second, the Plaintiffs argue that the Court should not use its discretion under rule 62 to stay the Final Judgment. See Response at 10. The Plaintiffs contend that the discretionary stay factors weigh against a stay, because: (i) FEMA is unlikely to succeed on the merits of the appeal; (ii) FEMA will not suffer irreparable harm; (iii) a stay will injure the Petitioners and other claimants seeking noneconomic damages; and (iv) a stay is not in the public interest. See Response at 11-18.

On December 10, 2025, FEMA files its Reply in Support of Motion to Stay Judgments Pending Appeal (Doc. 113)("Reply"). In the Reply, FEMA reiterates that an automatic stay is necessary, because the Final Judgment is a money judgment. See Reply at 2. FEMA argues that the Final Judgment qualifies as a money judgment, because it requires FEMA to pay noneconomic damages and, absent a stay, any payments will be difficult to recoup or unwind. See Reply at 3.

FEMA also reiterates that the discretionary stay factors favor issuance of a stay.  See Reply at 5-12.

## LAW REGARDING MOTIONS TO STAY

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.  See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.")(citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55.  Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court notes that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow."  Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden.  See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Technology, Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir.1983)).  "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others."  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484.  "The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'"  Commodity

Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The Tenth Circuit acknowledges a district court's discretion in issuing discovery stays.  In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argue "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appeal to the Tenth Circuit because the district court impose conditions on the stay.  43 F.3d at 1386.  The Tenth Circuit rebuffs the strict rules that the defendants suggest:

> As a general rule, discovery rulings are within the broad discretion of the trial court. Willner v. Budig, 848 F.2d 1032, 1035-36 (10th Cir. 1988).  Willner v. University of Kansas, 488 U.S. 1031 . . . (1989).  The trial court's decision on discovery matters "will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986).

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386.

Whether to issue a discovery stay depends greatly on each case's facts and progress.  In S2 Automation LLC v. Micron Technology, Inc., the Court grants in part and denies in part the Motion to Stay Discovery, Extend Pretrial Deadlines, Vacate Trial Setting and for Protective Order.  See 2012 WL 3150412, at *1.  The Court denies the motion to the extent it requests a discovery stay, because, "[u]ltimately, a stay is unnecessary."  2012 WL 3150412, at *3.  The parties make "significant progress on the disputed matters," and the Court "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded."  2012 WL 3150412, at *3.  Instead of granting the discovery stay, the Court extends deadlines that it set in the case based on the case's increasing complexity.  See 2012 WL 3150412, at *3.  In Walker v. THI of N.M. at Hobbs Ctr., No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluates whether to stay deposition discovery until thirty

days after it rules on the motions to dismiss two of the defendants, which determines whether those defendants remain in the suit and participate in discovery. See 2011 WL 2728326, at *1. The plaintiffs argue that the Court extends discovery deadlines and that issuing a stay requires rescheduling deadlines. See 2011 WL 2728326, at *1. The Court notes that counsel for the two defendants who are subject to the motions to dismiss indicate that they will not participate in deposition discovery. See Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2. The Court denies the motion to stay, because it did "not see a benefit to staying discovery." Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2. See Benavidez v. Sandia Nat'l Lab'ys, No. CIV 15-0922 JB/LF, 2016 WL 6404798 (D.N.M. September 27, 2016)(Browning, J.)(denying stay when "[t]here [is] no reason to put the Defendants to the trouble and expense of having to wait and file another motion -- largely regarding the same issues that are already before the Court in the pending Motion to Dismiss -- while the Plaintiffs get all of their ducks in a row").

On the other hand, the Court has found "compelling" motions to stay when the movant "requests to stay his own efforts to obtain relief." Howard v. City of Albuquerque, 349 F. Supp. 3d 1137, 1148 (D.N.M. 2018)(Browning, J.). In Howard v. City of Albuquerque, the Court concludes that discovery delays are "reasonable given the doubts about Howard's competency," and grants Howard's motion to stay pending related incompetency proceedings before the State judge. 349 F. Supp. 3d at 1148. Other factors that the Court considers when determining whether a stay will prejudice the non-moving party include the movant's ability to satisfy the non-moving party's discovery requests after the Court lifts the stay, the movant's stated willingness to cooperate with discovery following competency proceedings, and the non-moving party's ability to relitigate competency issues before the district court. See Howard v. City of Albuquerque, 349 F. Supp. 3d at 1148.

The Court also has granted motions to stay when State official defendants move to stay discovery pending a decision on qualified immunity.  See, e.g., Saenz v. Lovington Mun. School Dist., No. CIV 14-1005, 2015 WL 1906140 at *12 (D.N.M. April 6, 2015)(Browning, J.).  The Court particularly is inclined to stay discovery when defendants raise a qualified immunity defense at the motion-to-dismiss stage.  See Saenz v. Lovington Mun. School Dist., 2015 WL 1906140 at *10 ("Ordinarily, once a defendant files a motion to dismiss that raises qualified immunity, the Court should stay discovery.")(citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Additionally, because, at the motion-to-dismiss stage, the Court may consider only the facts which the plaintiff alleges in the complaint, the Court is less inclined to permit additional discovery that it otherwise will not consider at that stage.  See Saenz v. Lovington Mun. School Dist., 2015 WL 1906140 at *11 ("[T]he only use that discovery could provide in responding to the MTD would be to allow Saenz to more fully understand her claims and then amend the Complaint. This use is not an appropriate use of discovery in response to a qualified immunity defense.").

## LAW REGARDING RULE 62(b) STAYS

Rule 62 governs stays of judgments pending appeal.  See Fed. R. Civ. P. 62.  Under rule 62(b), "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security."  Fed. R. Civ. P. 62(b).  "The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."  Fed. R. Civ. P. 62(b).  When the United States or a federal agency appeals, however, no bond is required.  See Fed. R. Civ. P. 62(e)("The Court must not require a bond, obligation, or other security from the appellant when granting a stay on an appeal by the United States, its officers, or its agencies or on an appeal directed by a department of the federal government.").

Courts have read rule 62(b) and 62(e) together to provide that, when the United States appeals a judgment awarding monetary relief, the appeal automatically stays the judgment. For example, the United States Court of Appeals for the Eleventh Circuit explains that, "since rule 62(d)[5] entitles a litigant to a stay of a money judgment pending appeal upon payment of a bond, rule 62(e) entitles the United States to a stay of a money judgment pending appeal without payment of a bond." Dixon v. United States, 900 F.3d 1257, 1268 (11th Cir. 2018). See Lightfoot v. Walker, 797 F.2d 505, 507 (7th Cir. 1986)(concluding same). The Eleventh Circuit reasons that this interpretation "protects the judgment debtor from satisfying the judgment only to find that restitution is impossible after reversal on appeal" and recognizes that "a federal court's money judgment against the United States is already protected without the need for a bond." Dixon v. United States, 900 F.3d at 1268.

The Honorable Martha Vazquez, United States District Judge for the United States District Court for the District of New Mexico, reaches the same conclusion in Restitution Trust Corporation v. Schuchmann, 2001 WL 37125041, at *1 (D.N.M. 2001)(Vazquez, J.)("Restitution Trust"). There, Judge Vazquez explains that "the purpose of rule 62(d) is to ensure that a party who has won a money judgment will be able to recoup that judgment if the case is affirmed on appeal." 2001 WL 37125041, at *3. She further confirms "that agencies of the United States are entitled to a stay pending appeal, as of right, without having to post a *supersedeas* bond." Restitution Trust, 2001 WL 37125041, at *3.

As to how courts determine whether a judgment is monetary or nonmonetary, the United States Court of Appeals for the Fifth Circuit's decision in Herbert v. Exxon Corp., 953 F.2d 936

---

[5] In 2018, Rule 62 was amended to reorganize its provisions. The operative provisions of rule 62(b) were previously in rule 62(d). Hence, earlier cases discussing this provision reference rule 62(d).

(5th Cir. 1992)("Herbert"), is instructive.  In Herbert, the Fifth Circuit finds "no support for the proposition that a judgment for money is not entitled to an automatic stay pursuant to rule 62(d) simply because it takes the form of a declaratory judgment."  953 F.2d at 938.  Rather, the applicability of the automatic stay turns on "whether the judgment involved is monetary or nonmonetary[.]"  Herbet, 953 F.2d at 938.  There, the district court's declaratory judgment binds one party "to pay a specific sum of money."  953 F.2d at 938.  Because an order to pay a specific sum of money is a monetary judgment, rule 62(d) entitles the parties to an automatic stay pending appeal.  See Herbet, 953 F.2d at 938; see Kaseman v. D.C., 368 F. Supp. 2d 27 (D.D.C. 2005)("Kaseman").

## LAW REGARDING RULE  62(d) STAYS

Rule 62 also provides the framework for discretionary stays of injunctive relief.  See Fed. R. Civ. P. 62.  Rule 62(d) states that, "while an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  The Supreme Court explains that the decision to stay a judgment pending appeal is "an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstance of the particular case.'"  Nken v. Holder, 556 U.S. 418, 433 (2009)(quoting Virginian R. Co. v. United States, 272 U.S. 658, 672-73 (1926)).  That the issuance of a stay is left to the court's discretion, however, "does not mean that no legal standard governs that discretion[.]"  Nken v. Holder, 556 U.S. at 434.  Instead, the consideration of four factors guides the court's discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . .; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. at 434.

**ANALYSIS**

FEMA is not entitled to an automatic stay, because the Final Judgment is not a money judgment. The Court orders no payment of any defined sum and instead bars FEMA from categorically refusing to award noneconomic damages going forward. Moreover, because the discretionary stay factors cut against FEMA, the Court does not stay the Final Judgment. FEMA's request rests on a mischaracterization of the Final Judgment and a failure to satisfy the discretionary stay standard; the Court denies the Motion to Stay.

**I.    FEMA IS NOT ENTITLED TO AN AUTOMATIC STAY OF THE FINAL JUDGMENT, BECAUSE THE FINAL JUDGMENT IS NOT A MONETARY JUDGMENT.**

As a preliminary matter, the Court struggles to discern why FEMA seeks a stay of the Final Judgment. The Plaintiffs are not trying to foreclose a lien on any federal property or attach a stream of income to the federal government. Rather, FEMA asserts that a stay is necessary, because the Final Judgment will require FEMA to process and pay for noneconomic damages under the Hermit's Peak Act. See Motion to Stay at 2. According to FEMA, those payments will be difficult to recoup and will draw from a limited pool of funds. See Motion to Stay at 2. FEMA effectively concedes, however, that the Final Judgment does not require any such payments now. As FEMA acknowledges, "[t]his order will inevitably result in FEMA being required to pay a substantial number of claims for non-economic damages, even if such damages do not exist for every claimant." Motion to Stay at 2. In other words, FEMA's position is that the Final Judgment qualifies as a money judgment, not because it orders the payment of money, but because it may eventually result in monetary awards. See Motion to Stay at 8-9. What FEMA therefore asks the Court to stay today is not a payment obligation, but an injunction requiring FEMA to stop

- 15 -

categorically refusing to consider noneconomic damages.  From the Court's perspective, the reason for this request is difficult to ignore.  A stay allows FEMA to enter settlement conferences with victims of the Hermit's Peak/Calf Canyon Fire and continue to refuse to negotiate noneconomic damages -- invoking the stay as justification for that refusal.  In effect, FEMA seeks to preserve the status quo that the Final Judgment declares unlawful -- not to prevent irreparable harm -- but to maintain leverage in ongoing negotiations.  The Court will not permit an unnecessary stay to serve as a strategic pause button on compliance with the Court's interpretation of the law until the Tenth Circuit says otherwise.  The Court will not put its thumb on the scales while the parties attempt to settle these claims.  FEMA's concerns relate to settlement leverage, not to real world consequences of paying judicially adjudicated claims, see Final Judgment at 1, filed July 30, 2025 (Doc. 77 in No. CIV 24-0170)("Gallegos Final Judgment"), particularly where Plaintiffs have not asked the Court to order payment of what FEMA appeals -- or may later decide to appeal -- regarding the Court's ruling on noneconomic damages.

Rule 62(b) and 62(e) operate together to provide that, when the United States appeals a judgment awarding monetary relief, the appeal automatically stays the judgment.  See Dixon v. United States, 900 F.3d at 1268 (11th Cir. 2018)("[S]ince rule 62(d) entitles a litigant to a stay of a money judgment pending appeal upon payment of a bond, rule 62(e) entitles the United States to a stay of a money judgment pending appeal without payment of a bond."); See also Lightfoot v. Walker, 797 F.2d 505, 507 (7th Cir. 1986)(concluding same).  It follows that, for the Final Judgment automatically to be stayed, it must qualify as a money judgment.  FEMA contends that "a practical inquiry reveals that the Court's judgment is a monetary one that will require the United States to pay funds to Petitions and other claimants."  Motion to Stay at 8.  FEMA does not argue that the Final Judgment is a "literal money judgment."  Motion to Stay at 8.  Instead, FEMA

advances the far more expansive -- and untenable -- proposition that any order that may later result in the payment of money should itself be treated as a money judgment.  See Motion to Stay at 8. FEMA cites two cases in support of that theory: Herbert, 953 F.2d 936 (5th Cir. 1992), and Kaseman, 368 F. Supp. 2d 27 (D.D.C. 2005).  Neither support FEMA's proposition.

In Herbert, the Fifth Circuit considers whether a declaratory judgment qualifies as a money judgment for rule 62 purposes.  See 953 F.2d at 938.  The Fifth Circuit rejects the notion that a declaratory judgment is categorically exempt from an automatic stay and instead focuses on substance over form.  See 953 F.2d at 938.  The declaratory judgment at issue binds a party to pay a specific sum of money.  See 953 F.2d at 938 ("Albany Insurance Company provides insurance coverage for Gretna Machine & Iron Works, a division of Trinity Industries, Inc., for liability with respect to Paragraph 1 of this Judgment in excess of $298,866.91.").  Because the judgment "binds Albany to pay a specific sum of money," it qualifies as a money judgment notwithstanding its declaratory label.  953 F.2d at 938.  Herbert thus stands for the proposition that, in determining whether a judgment is a money judgment, courts should look past labels to determine whether a judgment orders payment of a sum certain.

Kaseman reaches the same conclusion.  There, the Honorable Ellen Huvelle, United States District Court Judge for the United States District Court for the District of Columbia, emphasizes that automatic stays should not turn on "mere technicality," but she made equally clear that the threshold inquiry remains whether the judgment is, in fact, a money judgment.  368 F. Supp. 2d at 29.  In Kaseman, the judgment is "unquestionably a monetary judgment," because it requires the payment of $90,929.83.  368 F. Supp. 2d at 29.  As in Herbert, the defining feature is not downstream effect, but a present obligation -- an order to pay a specific amount of money.

These cases underscore the flaw in FEMA's position.  FEMA asks the Court to treat future consequence as present character; to deem a judgment monetary not because it orders payment, but because it may someday lead to monetary awards or settlements in reliance on the Court's ruling.  This interpretation is not the law.

Here, the "**IT IS ORDERED**" section of the Final Judgment provides: "**IT IS ORDERED** that: (i) the Federal Emergency Management Agency's Hermit's Peak/Calf Canyon Fire Assistance Regulation, 44 C.F.R. § 296.21, is unlawful and is set aside; (ii) FEMA must award noneconomic damages for injuries resulting from the Hermit's Peak/Calf Canyon Fire; and (iii) Final Judgment is entered."  Final Judgment at 1.  The Final Judgment does not entitle the Plaintiffs to any monetary relief, nor does it require FEMA to pay any specific dollar amount to anyone.  The Final Judgment invalidates an unlawful regulation and prohibits FEMA from categorically refusing to award noneconomic damages, and nothing de jure more.  FEMA's request that the Court liberally construe the definition of a money judgment for purposes of rules 62(b) and 62(e) finds no support in the case law.  FEMA cannot cite a decision adopting such an expansive definition.  Instead, it relies on <u>Herbert</u> and <u>Kaseman</u> -- cases in which an automatic stay applies because the judgments order payment of a sum certain.  The Final Judgment does not order FEMA to pay anyone a specific amount of money.  Accordingly, no automatic stay applies.

FEMA also points to the Court's Final Judgment in <u>Gallegos v. FEMA</u>, No. CIV 24-0170 JB/JFR, as confirmation that the Final Judgment here "inevitably" results in monetary payments.  Motion to Stay at 8.  The "**IT IS ORDERED**" section in <u>Gallegos v. FEMA</u> states:

> **IT IS ORDERED** that: (i) Defendant Federal Emergency Management Agency's awards to the Plaintiffs are modified; (ii) FEMA shall pay: (a) $11,118.58 to Plaintiff Anthony Gallegos, which includes $9,000.00 in noneconomic nuisance damages; (b) $206,991.36 to Plaintiff Olen C. Priddy, which includes $150,000.00 in noneconomic nuisance damages; (c) $314,198.68 to Plaintiff Sheila Cavitt-Olguin, which includes $215,000.00 in noneconomic

nuisance damages; (d) $31,146.35 to Plaintiff Tyler Kemp, which includes $24,000.00 in noneconomic nuisance damages; (e) $269,782.43 to Plaintiff Deborah Leyba, which includes $100,000.00 in noneconomic nuisance damages and $169,782.43 in reforestation damages; (f) $15,112.35 to Plaintiff Rose Anna Marquez, which includes $12,000.00 in noneconomic nuisance damages; (g) $330,000.00 in noneconomic nuisance damages to Plaintiff Daniel Joslin; (h) $1,661,794.88 to Plaintiff Gregory Lungstrum, which includes $300,000 in noneconomic nuisance damages, $1,035,608.83 in reforestation damages, and $326,186.05 in road regrading and erosion damages; (i) $86,490.24 to Plaintiff Juanita Maestas, which includes $35,000.00 in noneconomic nuisance damages; (j) $1,203,921.32 to Plaintiff Candace Seaverns, which includes $250,000.00 in noneconomic nuisance damages and $953,921.32 in road regrading and erosion damages; (k) $353,986.11 to Plaintiff Richard Ogorek, which includes $270,000.00 in noneconomic nuisance damages; and (l) $266,460.24 to Plaintiff Juanita Herrera-Romero, which includes $180.000.00 in noneconomic nuisance damages; and (iii) Final Judgment is entered.

Gallegos Final Judgment at 1. The Gallegos Final Judgment, however, underscores the distinction FEMA seeks to erase. There, the Court orders FEMA to pay specified amounts -- itemized down to the dollar -- to named plaintiffs. Gallegos Final Judgment at 1. That judgment is a paradigmatic money judgment. The Final Judgment in this case is not a money judgment.

The Court has not entered a money judgment in this case because it concerns an APA claim. The Plaintiffs' Complaint seeks a: "declaratory judgment that the Rule is arbitrary and capricious and/or not in accordance with law insofar as it refuses to compensate noneconomic damages for interference with personal comfort, annoyance, and inconvenience, and that Defendants acted in excess of statutory authority in promulgating the Rule." Complaint at 21. This case is distinct from those cited by FEMA, such as Herbert, where the Fifth Circuit considers a judgment involving physical damage to a barge after an explosion, or Kaseman, which involves a district court's analysis of attorney's fees, not an APA claim. See 953 F.2d at 936; 368 F. Supp. 2d at 28. Generally, damages are not recoverable in APA cases. See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forrest Service, 921 F. Supp. 2d 1137, 1191-92 (D.N.M. 2013)(Browning, J.). FEMA has

not pointed to any APA case in which a judgment resulted in a money award with an automatic stay, and the Final Judgment here is not such a money judgment.

Moreover, FEMA cites no authority -- nor does the Court's independent research uncover any -- for the proposition that a judgment becomes a money judgment because it may serve as precedent in later cases that result in monetary awards. FEMA's theory converts nearly every injunction -- and, indeed, nearly every precedential ruling -- into a money judgment. Under that logic, a court order declaring an agency regulation unlawful is a money judgment whenever future claimants rely on that ruling to obtain damages. The law does not permit such a collapse of categories. The Court therefore denies the Motion to Stay to the extent it is premised on FEMA's asserted entitlement to an automatic stay.

## II.    THE COURT DOES NOT EXERCISE ITS DISCRETION TO STAY THE FINAL JUDGMENT, BECAUSE THE DISCRETIONARY STAY FACTORS DO NOT WEIGH IN FEMA'S FAVOR.

Context frames FEMA's request for a discretionary stay. In April 2022, a wildfire scorches over 340,000 acres of land in northeastern New Mexico, destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel and Taos Counties. See Patrick Lohmann, Were You Affected by the Massive Wildfire in Northern New Mexico? We Want to Hear From You, Were You Affected by the Massive Wildfire in Northern New Mexico? We Want to Hear From You (March 2, 2023), https://www.propublica.org/getinvolved/new-mexico-wildfires-hermits-peak-calf-canyon (last accessed December 30, 2025). In September 2022, Congress establishes a dedicated relief fund for victims by enacting the Hermit's Peak Act, providing: "Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim." Hermits Peak Act § 104(d)(1)(A)(i). The Plaintiffs submit their claim to FEMA on or about April 3, 2023. See Response at 17. Although FEMA issues a final

determination on December 3, 2024, denying noneconomic damages, the Plaintiffs have now waited 1,004 days -- until January 1, 2026 -- for relief.  In light of this delay, FEMA's request for a stay is unconvincing.  After the Plaintiffs have waited more than 1,000 days for relief, it is difficult for the Court to justify more delay.

FEMA nevertheless requests a stay, prompting the Court to evaluate the requirements of rule 62.  See Motion to Stay at 1.  Rule 62 governs discretionary stays.  See Fed. R. Civ. P. 62. Rule 62(d) states that, "while an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  The Supreme Court explains that the decision to stay a judgment pending appeal is "an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstance of the particular case.'"  Nken v. Holder, 556 U.S. 418, 433 (2009)(quoting Virginian R. Co. v. United States, 272 U.S. 658, 672-73 (1926)). That the issuance of a stay is left to the court's discretion, however, "does not mean that no legal standard governs that discretion[.]"  Nken v. Holder, 556 U.S. at 434.  Instead, consideration of four factors guides the court's discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . .; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. at 434.  The Court concludes that these factors do not favor a discretionary stay.

> **A.    FEMA DOES NOT MAKE A STRONG SHOWING OF LIKELY SUCCESS ON APPEAL, BECAUSE IT MAKES THE SAME ARGUMENTS THAT THE COURT ADDRESSES IN THE MOO AND IN THE RECONSIDERATION MOO.**

The applicant for a discretionary stay pending appeal must make a "strong showing" that it is likely to succeed on appeal.  Nken v. Holder, 556 U.S. at 434.  A showing of success must be more than "better than negligible."  Nken v. Holder, 556 U.S. at 434.  FEMA asserts two reasons why the Court's decision allowing the Plaintiffs to pursue noneconomic damages is likely to be reversed or vacated on appeal.  See Motion to Stay at 10.  First, FEMA argues that the Court's interpretation of the Hermit's Peak Act to incorporate New Mexico tort law for the recovery of noneconomic damages contradicts the Act's plain language, which limits the application of New Mexico law to economic damages.  See Motion to Stay at 10.  Second, FEMA contends that the Court incorrectly incorporates New Mexico law beyond the scope of § 104(c)(2), which directs the calculation of economic damages under New Mexico law, by requiring the determination of whether claimants can support tort claims under New Mexico law.  See Motion to Stay at 12.  The Court fully addresses these arguments in two prior opinions and orders: the ninety-nine-page MOO filed on December 17, 2024, and the one-hundred-and-forty-two-page Memorandum Opinion and Order filed on July 18, 2025 (Doc. 81)("Motion to Amend MOO"), in response to FEMA's Motion to Alter or Amend the December 17, 2024, MOO.  See MOO at 1; Motion to Amend MOO at 1.  Both orders reach the same conclusion -- that the Plaintiffs are entitled to pursue noneconomic damages.  Given this conclusion, the Court concludes that FEMA has not made a strong showing of likely success on appeal.  It would be odd for the Court to work so hard on this issue and then say that it is likely that the Tenth Circuit will reverse the Court.  If the Court thought that it is likely that the Tenth Circuit will reverse its judgment, the Court would have come out the other way.  The Court has done the best it can on the issue, and the Court may be wrong, but given the Court's work on the case, the Court cannot say that it is likely that the Tenth Circuit will reverse its judgment.  Therefore, this factor weighs in favor of denying the stay.

### B.    FEMA WILL NOT SUFFER IRREPARABLE INJURY ABSENT A STAY, BECAUSE THE FINAL JUDGMENT IS NOT A MONEY JUDGMENT.

FEMA does not demonstrate that it will suffer irreparable injury without a stay.  Showing "some possibility of irreparable injury" fails to satisfy the second factor.  Nken v. Holder, 556 U.S. at 434-35.  FEMA argues that, if the Court does not stay the Final Judgment, FEMA will suffer irreparable harm, because Congress appropriated a finite amount of funds for claims under the Hermit's Peak Act, and that there is no allocation for noneconomic damages.  See Motion to Stay at 15-16.  FEMA further argues that, if FEMA pays noneconomic damages claims and the Tenth Circuit reverses the judgments, it will be difficult, if not impossible, to recover those payments from the claimants.  See Motion to Stay at 16.  This argument fails for the same reason that FEMA is not entitled to an automatic stay: the Final Judgment does not require FEMA to pay noneconomic damages.  The Final Judgment requires FEMA only to cease its blanket refusal to consider such damages.  See Final Judgment at 1.  The Plaintiffs, or any other claimants, still must prove their entitlement to noneconomic damages.  The Court therefore concludes that FEMA has not shown that the Final Judgment results in irreparable harm, and this factor favors denying the stay.

### C.    AN ISSUANCE OF A STAY WILL INJURE SUBSTANTIALLY THE PLAINTIFFS' INTEREST IN THE PROCEEDING.

FEMA argues that it, the non-party claimants, and the public have a strong interest in ensuring that FEMA allocates Congress' limited appropriation under the Hermit's Peak Act to valid claims, and that the payments do not deplete the fund that the Tenth Circuit later deems uncompensable.  See Motion to Stay at 15.  The Court reiterates, however, that the Final Judgment does not require FEMA to pay money to any claimants from the appropriated fund.  See Final Judgment at 1.  Rather, the Final Judgment is a legal ruling that permits the Plaintiffs and other claimants to pursue noneconomic damages claims, and not an order to make immediate payments.

See Final Judgment at 1.  When considering whom a stay of the Final Judgment will substantially injure, the Plaintiffs will suffer harm.

Congress intends for FEMA to process claims that claimants submit under the Hermit's Peak Act within 180 days of submission.  See Response at 16.  The Hermit's Peak Act mandates that "not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."  Hermit's Peak Act § 104(d)(1)(A)(i).  Without a stay, the Plaintiffs have waited over 1,000 days for relief -- well beyond Congress' intended timeline.  See Response at 17.  If the Court grants a discretionary stay, it further delays FEMA's eventual payment of the Plaintiffs' noneconomic damages claims, exacerbating an already drawn-out process.  This factor favors denying the stay.

### D.     THE PUBLIC INTEREST FACTOR FAVORS THE PLAINTIFFS.

Because the federal courts have limited judicial resources, piecemeal litigation is not in the public interest.  See Kerr v. U.S. Dist. Court for Northern Dist. of California, 426 U.S. 394, 403 (1976)("More importantly, particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation."). The Plaintiffs argue that granting a stay would lead to duplicative, piecemeal litigation by allowing claims to proceed on all categories of damages except noneconomic damages, ultimately requiring a second round of litigation when the Tenth Circuit affirms the Court's decision.  See Motion to Stay at 18.  FEMA counters that proceeding with litigation on noneconomic damages wastes judicial resources in the event that the Tenth Circuit reverses the Court's ruling.  See Motion to Stay at 16-17.  Although either course carries some risk of piecemeal litigation, the Court concludes that Plaintiffs' scenario is more likely -- particularly given the extensive time and careful analysis the Court has already devoted to the legal issues FEMA seeks to relitigate on appeal.

The public interest weighs more strongly against a stay, because Congress enacted the Hermit's Peak Act to ensure prompt compensation of wildfire victims and not to delay relief. The public has a substantial interest in the faithful and timely execution of that statutory mandate. See United States v. Dolan, 571 F.3d 1022, 1027 (10th Cir. 2009)("Congress imposes deadlines on other branches of government to prod them into ensuring the timely completion of their statutory obligations to the public, not to allow those branches the chance to avoid their obligations just by dragging their feet."). A stay undermines that purpose by postponing the compensation which Congress intends the victims to receive without delay. Given that all four factors favor the Plaintiffs, the Court determines that a discretionary stay is not appropriate. The Court denies the Motion to Stay.

**IT IS ORDERED** that: (i) the Defendants/Respondents' Motion to Stay Judgments Pending Appeal, filed September 16, 2025 (Doc. 87 in No. 23-0908), is denied; and (ii) the Defendant/Respondents' Motion to Stay Judgments Pending Appeal, filed September 16, 2025 (Doc. 81 in No. 23-0869), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Thomas Tosdal
Tosdal Law Firm
Solana Beach, California

-- and --

Ty Tosdal
Tosdal APC
San Diego, California

-- and --

Mark Dow
Cynthia Weisman
Bauman & Dow, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff Charles William Paynter*

Thomas Tosdal
Tosdal Law Firm
Solana Beach, California

-- and --

Ty Tosdal
Tosdal APC
San Diego, California

    *Attorneys for the Plaintiff Marianna Lands*

Brian Colon
Jesse Gallegos
Jacob Payne
Singleton Schreiber
Albuquerque, New Mexico

-- and --

Gerald Singleton
Benjamin Siminou
Jonna D. Lothyan
Krystle D. Berkstresser
Alicia Zimmerman
Singleton Schreiber
San Diego, California

    *Attorneys for Plaintiffs Tobin Dolan, Lydia Dolan, Tangee Dolan, Dorothy Jones, Brian Rodgers, Barbara Rodgers, Michael Salazar, Linda Salazar, Reynaldo Herrera, and Kathy Valera*

Joe Lovell
Lovell Hoffman Law, PLLC
Amarillo, Texas

    *Attorneys for the Plaintiff Kathy Valera*

Ryan Ellison
 United States Attorney
Nicholas Sydow
Brett Eaton
 Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendants*